Filed 12/20/16

CERTIFIED FOR PARTIAL PUBLICATION*

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E064318 |
| v. | (Super.Ct.No. FMB1400074) |
| KYLE WESLEY BROWN, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Bert L. Swift, Judge.  (Retired judge of the San Bernardino Super. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.)  Affirmed as modified.

Jennifer A. Gambale, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Julie L. Garland, Senior Assistant Attorney General, and Barry Carlton and Heidi Salerno, Deputy Attorneys General, for Plaintiff and Respondent.

---

*       Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of part III.

1

After defendant Kyle Wesley Brown and victim Rebekka Chartier broke up, he demanded that she "get friendly and get over it," or he would "pop [her] tires." She refused, so he punctured her tires with a knife. This violated a restraining order then in effect. Chartier called the police.

About two weeks later, defendant phoned Chartier; he threatened to "take [her] life" unless she went to the police and recanted. This violated the same restraining order.

After a jury trial, defendant was found guilty of witness intimidation, a serious felony (Pen. Code, § 136.1, subd. (c)(1); see also Pen. Code, § 1192.7, subd. (c)(37)); vandalism, a misdemeanor (Pen. Code, § 594, subd. (b)(2)(A)); and two counts of violation of a court order, a misdemeanor (Pen. Code, § 166, subd. (a)(4)).

In a bifurcated proceeding, after defendant waived a jury, the trial court found true two strike priors (Pen. Code, §§ 667, subds. (b)-(i)), two prior serious felony conviction enhancements (Pen. Code, § 667, subd. (a)), and three prior prison term enhancements (Pen. Code, § 667.5, subd. (b)). However, it then struck two of the three prior prison term enhancements, because they were based on the same convictions as the prior serious felony conviction enhancements. (*People v. Jones* (1993) 5 Cal.4th 1142, 1153.) Defendant was sentenced to a total of 35 years to life in prison, along with the usual fines, fees, and miscellaneous sentencing orders.

Defendant takes issue solely with his conviction for witness intimidation under Penal Code section 136.1 (section 136.1). In his view, his conduct was properly punishable as a different form of witness intimidation under Penal Code section 137 (section 137). Based on this proposition, he raises three separate contentions:

2

1.  Defendant could not be convicted under section 136.1, a general statute, because section 137 was a special statute applicable to the same conduct.

2.  Convicting defendant under section 136.1 rather than under section 137 violated equal protection.

3.  The trial court erred by refusing to instruct on section 137 and by precluding defense counsel from arguing that defendant was guilty under section 137.

We reject defendant's contentions.  However, we find that the sentence must be modified in one minor respect that does not affect the aggregate term.  Hence, we will affirm the judgment as modified.

# I

## FACTUAL BACKGROUND

A.      *August 2012:  Uncharged Prior Incident*.

Rebekka Chartier is the mother of defendant's two children.  By August 2012, however, she and defendant were no longer a couple.

Around that time, they got into an argument.  While Chartier was making a phone call, defendant grabbed the phone out of her hand and threw it to the ground, smashing it to pieces.  She tried to open the door to leave the room, but defendant tried to push it closed.  When she managed to open the door, she ran out to her car, drove to a gas station, and called 911.

On August 5, 2012, Chartier had a restraining order served on defendant.  It forbade him, among other things, to "contact . . . or send any messages . . . by mail . . . [to] Rebekka Chartier."

3

While the restraining order was in effect, he sent her a letter saying, "[Y]ou know how serious this is and how much time I'm looking at. . . . [Y]ou can get me out any time, just call my Public Defender . . . . I know you're not stupid and I don't have to tell you what to say. I'm sure you can figure it out and I hope you do." She understood that he was asking her to take back her report to the police.

B. *December 2013: Defendant "Pops" Chartier's Tires*

*(Counts 3 and 4).*

On April 8, 2013, Chartier had another restraining order served on defendant, effective for three years. It forbade him, among other things, to "harass, . . . threaten, . . . destroy or damage personal or real property, [or] disturb the peace . . . of Rebekka Chartier."

On the night of December 28-29, 2013, Chartier took the children to the home of her friend, Melody Olson, in Yucca Valley, and invited defendant to come over and visit them there.

After defendant arrived, he and Chartier got into an argument. She repeatedly asked him to leave. Finally, around 12:30 a.m., he left.

Around 2:30 or 3:30 a.m., however, he came back. Chartier and Olson were out on the front porch, talking and having a couple of beers. Defendant came up on the porch and sat down. At first, he seemed friendly. He told Chartier that they should reconcile. Chartier said, "[N]o. I think you should leave."

Defendant then volunteered that "he had c[o]me there with bad intentions." He was already wearing black gloves; he pulled out a knife. He said "either [she] and him

4

get friendly and get over it . . . or he was going to pop [her] tires." She replied, "If you pop my tires I'm going to call 911." Defendant walked over to her car and used the knife to puncture two tires. He then went back to his car and drove away. Meanwhile, Chartier called 911. When an officer responded, she told him about the vandalism.

C.      *January 2014:  Defendant Threatens Chartier*

        (*Counts 1 and 2*).

As of January 14, 2014, Chartier had not had any further contact with defendant. That day, she was at the salon in Redlands where she worked when she got a phone call from a man who identified himself as Jeff. However, she recognized the voice as defendant's.

Defendant told her to take back her report to the police. He said she was sending him to prison. He added, "[S]ince you're taking my life, [I]'ll take your life." After the phone call, Chartier called 911.

## II

## THE INTERACTION OF SECTION 136.1 AND SECTION 137

A.      *Relevant Statutes*.

Penal Code sections 131 through 141 define various crimes generally involving witness and evidence tampering. For our purposes, it is important to understand four of these crimes.

Section 136.1 is entitled, as relevant here, "Intimidation of witnesses and victims . . . ." By one court's reckoning, it defines some 20 distinct offenses. (*People v. Torres* (2011) 198 Cal.App.4th 1131, 1137-1138.) One of these is "attempt[ing] to prevent or

dissuade another person who has been the victim of a crime or who is witness to a crime" from "[c]ausing a complaint, indictment, information, probation or parole violation to be sought and prosecuted, and assisting in the prosecution thereof." (§ 136.1, subd. (b)(2).) We will refer to this, in shorthand fashion, as "preventing prosecution."

Section 136.1, subdivision (c)(1) increases the penalty for preventing prosecution — and for any other violation of section 136.1 — when committed "knowingly and maliciously" and "accompanied by force or by an express or implied threat of force or violence . . . ." (§ 136.1, subd. (c)(1).) We will refer to this as "forcibly preventing prosecution."

Here, the jury was instructed accurately on preventing prosecution and on forcibly preventing prosecution. (CALCRIM Nos. 2622, 2623.)

Section 137 is entitled, "Influencing testimony or information given to a law enforcement official." It defines three distinct offenses. One of these is "knowingly induc[ing] another person to give false testimony or withhold true testimony . . . or to give false material information pertaining to a crime to, or to withhold true material information pertaining to a crime from, a law enforcement official . . . ." (§ 137, subd. (c).) We will refer to this as "inducing falsehood."

Section 137, subdivision (b) increases the penalty for inducing falsehood when committed "by force or threat of force or by the use of fraud . . . ." We will refer to this as "forcibly inducing falsehood."

Forcibly preventing prosecution in violation of section 136.1 is a serious felony. (§ 1192.7, subd. (c)(37); *People v. Anaya* (2013) 221 Cal.App.4th 252, 270–271.)

6

Accordingly, defendant, as a third-striker, was subject to a sentence of 25 years to life for this crime. (§§ 667, subd. (e)(2)(A), 1170.12, subd. (c)(2)(A).)

Forcibly inducing falsehood, on the other hand, is a felony (§ 137, subd. (b)) but not a serious or violent felony. (See §§ 667.5, subd. (c), 1192.7, subd. (c).) Accordingly, had defendant been convicted of this crime, he would only have been subject to a sentence of four, six, or eight years. (§§ 137, subd. (b), 667, subds. (e)(1), (e)(2)(C), 1170.12, subds. (c)(1), (c)(2)(C).)

B.      *The General-Versus-Special Rule*.

Defendant contends that that he had to be charged and convicted, if at all, under section 137, rather than section 136.1.

"[I]f a general statute includes the same conduct as a special statute, the court infers that the Legislature intended that conduct to be prosecuted exclusively under the special statute. . . . 'The rule is not one of constitutional or statutory mandate, but serves as an aid to judicial interpretation when two statutes conflict.' [Citation.]" (*People v. Murphy* (2011) 52 Cal.4th 81, 86; see also Code Civ. Proc., § 1859.)[1]

---

[1]     Defendant calls this the "preclusionary rule." No California case, however, has ever referred to it as such. In our view, this sounds enough like the more familiar exclusionary rule to be confusing.

This court has occasionally referred to it as the "doctrine of preclusion." (*People v. Spence* (2005) 125 Cal.App.4th 710, 720; *In re Ricardo A.* (1995) 32 Cal.App.4th 1190, 1194.) Again, however, we fear this is too easily confused with the unrelated doctrines of issue preclusion and claim preclusion.

A handful of cases have called it the "preemption doctrine." (*People v. Murray* (2008) 167 Cal.App.4th 1133, 1141; *People v. Jones* (2003) 108 Cal.App.4th 455, 463.) Alas, this sounds all too much like federal-state preemption.

*[footnote continued on next page]*

7

"Absent some indication of legislative intent to the contrary, th[is] rule applies when (1) 'each element of the general statute corresponds to an element on the face of the special statute' or (2) when 'it appears from the statutory context that a violation of the special statute will *necessarily or commonly* result in a violation of the general statute.' [Citation.] In its clearest application, the rule is triggered when a violation of a provision of the special statute would inevitably constitute a violation of the general statute." (*People v. Murphy*, *supra*, 52 Cal.4th at p. 86, italics added.)

According to defendant, under this rule, section 136.1 is a general statute and section 137 is a special statute, so that anybody who could be found guilty under section 137 cannot be found guilty under section 136.1. It is important, however, to focus on the elements of the particular *subdivisions* of sections 136.1 and 137 that are at issue.

Forcibly preventing prosecution under section 136.1, subdivision (c)(1) encompasses *any* violation of section 136.1, subdivisions (a) and (b), when accompanied by force — not only preventing prosecution, but also preventing testimony (§ 136.1, subds. (a)(1), (a)(2)), preventing a report (§ 136.1, subd. (b)(1)), and preventing arrest (§ 136.1, subd. (b)(3)). Accordingly, we also need to focus on the elements of preventing prosecution. (§ 136.1, subd. (b)(2).)

---

*[footnote continued from previous page]*
While we cannot claim to have come up with the perfect name for it, we will call it the "general-versus-special rule."

Similarly, forcibly inducing falsehood in violation of section 137, subdivision (b) encompasses inducing falsehood, when accompanied by force or fraud. Thus, we also need to focus on the elements of inducing falsehood (§ 137, subd. (c)).

Not every element of section 136.1, subdivision (b)(2) corresponds to an element of section 137, subdivision (c). To put it another way, section 137, subdivision (c) is not a lesser included offense of section 136.1, subdivision (b)(2). Thus, a violation of section 137, subdivision (c) will not *necessarily* constitute a violation of section 136.1, subdivision (b)(2). The question, then, is whether a violation of section 137, subdivision (c) will *commonly* constitute a violation of section 136.1, subdivision (b)(2). Commonly is defined as usually, ordinarily, or generally. (Oxford English Dict. (3d ed. 2009) at http://www.oed.com/view/Entry/37243 [as of Dec. 15, 2016].)

We conclude that inducing falsehood in violation of section 137, subdivision (c) will not commonly constitute preventing prosecution in violation of section 136.1, subdivision (b)(2), for three reasons.[2]

First, under section 136.1, subdivision (b)(2), the perpetrator must attempt to prevent a person from causing a charging document to be sought and prosecuted *and* from assisting in the prosecution. Thus, the prevention must occur before the relevant

---

[2] It could be argued that forcibly inducing falsehood in violation of section 137, subdivision (b) does not commonly constitute forcibly preventing prosecution in violation of section 136.1, subdivision (c)(1) because the former can be committed by force or fraud, whereas the latter can only be committed by force. However, the mere fact that a special statute can be violated in two ways, one of which does not violate the general statute, does not take the case outside the general-versus-special rule. (*People v. Murphy*, *supra*, 52 Cal.4th at pp. 89-91.)

9

charging document has been filed.[3] By contrast, under section 137, subdivision (c), inducing falsehood can occur at any time, up to and including trial.

Second, the victim must be so central to the case as to be able to *cause* the filing. Plenty of persons with material information about a crime are nevertheless not so central to it as to be in a position to cause, rather than merely assist, the prosecution.

Third, section 136.1, subdivision (b)(2) applies only to attempts to *exculpate* the accused. Section 137, subdivision (c), by contrast, applies to attempts to falsely implicate as well as to falsely exculpate.[4] A perpetrator who is trying to frame someone else may be guilty of inducing falsehood under section 137, subdivision (c), but not guilty of preventing prosecution under section 136.1, subdivision (b)(2).

Defendant nevertheless argues that "section 136.1 must be considered a generalized statute addressing the intimidation and influencing of witnesses, whereas section 137 is a statute specifically limited to the influencing the *content* of information given to a law enforcement official."

He relies on *People v. Fernandez* (2003) 106 Cal.App.4th 943, which held that an attempt to convince a victim not to testify at a preliminary hearing constitutes an attempt

---

**3** One caveat: Because preventing prosecution can be committed by a mere attempt to prevent prosecution, presumably it could be committed after the charging document was filed, as long as the defendant did not *know* the charging document had been filed and still *intended* to prevent it from being filed.

**4** Section 136.1, subdivision (b)(1), unlike section 137, subdivision (c), applies only to an attempt to induce a witness or victim. However, it could be argued that all (or at least most) persons with material information pertaining to a crime are witnesses. Accordingly, we do not rely on this relatively minor wording difference.

10

to influence a witness's testimony, in violation of section 137, subdivision (c), rather than an attempt to prevent a victim from making a report in violation of section 136.1, subdivision (b)(1). (*Fernandez*, *supra*, at pp. 948-951.)

At one point, the court observed: "Some of the statutes in this chapter target threats of violence made by a defendant after his conviction of a felony, or in retaliation for cooperation with law enforcement. (§§ 139, 140.) Others punish efforts to prevent a victim or witness from appearing in court and giving testimony. (§§ 136.1, subds. (a)(1) & (2), (c); 138, subd. (a) . . . .) Still others punish attempts to influence the *content* of testimony given, as distinguished from efforts to prevent a victim or witness from appearing at all. (§ 137, subds. (a)-(c) . . . .)" (*People v. Fernandez*, *supra*, 106 Cal.App.4th at p. 948.)

We reiterate that it is important to identify the particular subdivisions of section 136.1 and section 137 that are at issue. Significantly, in *Fernandez*, the court did not say into which of the listed categories section 136.1, subdivision (b)(2) fell — or that it fell into any. There was simply no issue before the court concerning section 136.1, subdivision (b)(2).

In our view, this subdivision does not fit neatly into any of the categories listed in *Fernandez*. It applies in narrower circumstances than section 137, subdivisions (a), (b), or (c). However, when it does apply, it applies regardless of whether the witness is prevented or dissuaded from appearing, or merely prevented or dissuaded from speaking the truth — or both.

11

Defendant does not purport to dispute that his conduct fell squarely within the literal language of section 136.1, subdivision (b)(2). Rather, his argument is that, under the general-versus-special rule, section 136.1, subdivision (b)(2) must be construed, *in spite of* its literal language, to exclude any conduct that *also* falls within section 137, subdivision (c). Indeed, as he concedes, the general-versus-special rule is not triggered unless "two statutes apply to the same conduct." (*People v. Rackley* (1995) 33 Cal.App.4th 1659, 1665.)

Nevertheless, occasionally, defendant seems to be making an argument about the literal language of section 136.1, subdivision (b)(2). For example, he states that he "told Chartier to take back the portion of the report concerning the punctured tires. He said nothing about the portion of her statement in which she reported the violation of a restraining order." "*Thus, [defendant]'s actions during the telephone call were not to dissuade Chartier from causing a complaint to be made*, but instead were to induce her to change the content of the information initially provided to the police. The evidence, therefore, suggested he was not, as respondent contends, trying to derail the prosecution in its entirety." (Italics added, italics omitted.)

Unlike the first restraining order, however, the second restraining order, in effect on December 29, 2013, did not prohibit defendant from contacting Chartier in a nonharassing manner. Defendant's only violation of that restraining order was puncturing the tires. Thus, as long as she took back her statement that he punctured her tires, he could reasonably expect that he would not be prosecuted at all.

12

Defendant also argues: "Chartier reported the incident to the police on December 18, 2013. Based on her report alone, a criminal complaint could have been filed. [Defendant] waited nearly a month before calling Chartier. Thus, [defendant]'s request that she take back the portion of the report concerning the tires *was not aimed at preventing a complaint from being filed . . . .*" (Italics added.)

Defendant asks us to assume that, simply because a complaint *could have been* filed, he believed a complaint *had been* filed. Under the substantial evidence rule, however, we must draw every reasonable inference favorable to the judgment. (*People v. Covarrubias* (2016) 1 Cal.5th 838, 890.) It is more reasonable to suppose that, because defendant asked Chartier to go to the police and withdraw her report — rather than to go to the prosecutor and withdraw any charges — he believed that a complaint had not yet been filed. Indeed, it is undisputed that, in fact, the complaint was filed later.

We therefore conclude that there was substantial evidence to support defendant's conviction under section 136.1, subdivision (c)(1), and the prosecution was not required to proceed under section 137, subdivision (b) instead.

C.     *Violation of Equal Protection.*

Defendant contends that his prosecution and conviction under section 136.1 violated equal protection, because a similarly situated offender who was prosecuted and convicted under section 137 would be subject to markedly lesser punishment.

"[N]either the existence of two identical criminal statutes prescribing different levels of punishments, nor the exercise of a prosecutor's discretion in charging under one

such statute and not the other, violates equal protection principles. [Citation.]" (*People v. Wilkinson* (2004) 33 Cal.4th 821, 838.)

In *Wilkinson*, the California Supreme Court held that defendant may not complain that she was charged with battery against a custodial officer under Penal Code section 243.1, a felony, rather than under section 243, subdivision (b), a misdemeanor, even though the two statutes are otherwise "identical." (*People v. Wilkinson, supra*, 33 Cal.4th at p. 838.) It stated, "numerous factors properly may enter into a prosecutor's decision to charge under one statute and not another, such as a defendant's background and the severity of the crime, and so long as there is no showing that a defendant 'has been singled out deliberately for prosecution on the basis of some invidious criterion,' that is, '"one that is arbitrary and thus unjustified because it bears no rational relationship to legitimate law enforcement interests[,]"' the defendant cannot make out an equal protection violation. [Citation.]" (*Id.* at p. 838–839.)

Defendant does argue that the decision to charge him under section 136.1 rather than section 137 was arbitrary and irrational. However, he has not made any *showing* of this. We cannot just presume that the prosecutor acted arbitrarily. Hence, defendant's equal protection claim must fail.

D.     *Denial of Instructions and Argument on Forcibly Inducing Falsehood*.

Defendant contends that the trial court erred by refusing to instruct on section 137 and by precluding his counsel from arguing that defendant was guilty under section 137 rather than under section 136.1.

14

1.    *Additional factual and procedural background.*

At an instructions conference, defense counsel argued that defendant was guilty, if at all, under section 137. He requested an instruction on section 137, subdivision (b). He also requested an instruction that "the specific intent to prevent or dissuade a witness from testifying, or to prevent [a witness] from making a law enforcement report at all, is not compatible with the specific intent to influence or shape the [testimony] that the witness gives."

In support of his request, defense counsel cited *People v. Womack* (1995) 40 Cal.App.4th 926. *Womack* held that a forcible attempt to prevent a witness from testifying *at all*, in violation of section 136.1, subdivisions (a) and (c)(1), does not constitute a forcible attempt to induce a witness to give false testimony in violation of section 137, subdivision (b). (*Womack*, *supra*, at pp. 929-934.) Defense counsel argued that *Womack* was "on point" because defendant "was attempting to . . . have [Chartier] . . . give false information."

The prosecutor opposed the request, arguing, "He is not charged with 137. If [the] defense wants to argue that the People haven't met their burden of proving these elements of the crime, that is certainly what he should do, but as far as changing it . . . , and then confusing them with an uncharged crime, I just don't believe it's appropriate."

Defense counsel responded, "[W]hile I can argue it to the jury . . . , they can just disbelieve me because I can't point to any part of the jury instruction . . . ."

The trial court declined to give the requested instructions.

15

In closing argument, defense counsel started to talk about *Womack*. The prosecutor objected. The trial court ordered defense counsel not to refer to *Womack*. If also ordered him not to "bring in any law other than what's been given to the jury in this case."

2. *Discussion.*

As discussed in part II.B, *ante*, inducing falsehood, in violation of section 137, subdivision (b), is not a lesser included offense of dissuading prosecution, in violation of section 136.1(b)(2). Rather, as defendant concedes, it is a lesser *related* offense. "Lesser included offenses are distinguished from lesser *related* offenses, which 'merely bear some relationship' to another offense. [Citation.]" (*People v. Robinson* (2016) 63 Cal.4th 200, 207, fn. 3.)

The strategic concerns of a defendant with regard to instructions on a lesser related offense are well-known. When the jury is instructed only on a greater offense, and it has some doubts about an element of that offense, it may be tempted to avoid acquitting the defendant entirely by resolving its doubts in favor of conviction. Thus, if it is instructed on a lesser related offense, as a third option, it may be less likely to convict on the greater — but also less likely to acquit the defendant entirely.

Under *People v. Geiger* (1984) 35 Cal.3d 510, a trial court had a duty to instruct, sua sponte, on any lesser related offense. In 1989, however, *People v. Birks* (1998) 19 Cal.4th 108 overruled *Geiger*. Now, "[a] defendant has no right to instructions on lesser related offenses, even if he or she requests the instruction and it would have been supported by substantial evidence, because California law does not permit a court to

16

instruct concerning an uncharged lesser related crime unless agreed to by both parties. [Citations.]" (*People v. Jennings* (2010) 50 Cal.4th 616, 668.)

Here, defense counsel was essentially requesting a jury instruction on a lesser related offense. The trial court was not allowed to grant this request without the consent of the prosecution. Moreover, defense counsel wanted to enjoy the benefit of an instruction on a lesser related offense — a reduced risk of a conviction on the greater — without bearing the burden that defendant might be convicted on the lesser.

As defendant candidly concedes, *People v. Valentine* (2006) 143 Cal.App.4th 1383 rejected a similar argument. There, the defendant was convicted of robbery. (*Id*. at p. 1385.) On appeal, he argued that the trial court erred by denying his request for an instruction on receiving stolen property. (*Id*. at p. 1386.) He argued that "the omission amounted to a failure to instruct on a defense theory — that he received property he knew to be stolen but that he did not steal it." (*Id*. at p. 1387.)

The appellate court disagreed, stating, in part: "Prior to *Birks*, one accused of robbery could offer evidence that he received the proceeds of the robbery knowing them to be stolen. Thereafter he would be entitled to an instruction on the lesser-related offense shown by the evidence to have been committed and urge the jury that he be convicted of that lesser crime. [Citation.] He could not, however, argue for acquittal of both the greater *and* the lesser-related offense. Valentine acknowledges that *Birks* overruled *Geiger* and that he is neither entitled to an instruction on a lesser-related offense nor to urge his conviction for that offense. Rather, he wants the instruction so

17

that he can argue for an outright acquittal!  To paraphrase Winston Churchill, *this is the sort of thing up with which we will not put*.

"Moreover, the offense of receiving stolen property is not a *defense* to robbery; rather, it is a theory of criminal liability based on a different offense.  Thus, the failure to give the instruction did not impinge on Valentine's right to present a defense to robbery.  It simply reflected the fact that the prosecutor chose not to file on the other charge." (*People v. Valentine*, *supra*, 143 Cal.App.4th at p. 1388.)

Defendant tries to hang his hat on the hook of a single sentence in *Valentine*.  The court did also state:  "We do not suggest . . . that Valentine could not argue to the jury that his culpability was as one who was in possession of stolen property but not one who committed a robbery."  (*People v. Valentine*, *supra*, 143 Cal.App.4th at p. 1388.) Nevertheless, it held that the defendant was not entitled to an instruction on receiving stolen property.  Here, similarly, defendant was not entitled to an instruction on forcibly inducing falsehood.

Defendant's point may be that, even if he was not entitled to an instruction, his counsel should have been allowed to argue that he was only guilty of forcibly inducing falsehood.  However, he was free to do so.  The greater offense on which the jury was instructed — forcibly dissuading prosecution — required an intent to prevent or dissuade Chartier from causing a complaint to be sought and prosecuted.  He could argue that defendant intended to get Chartier to lie to the police but did not intend to prevent the filing of a complaint.  On these facts, that would be a pretty ludicrous argument — but

18

defense counsel was free to make it.[5]  He simply could not discuss *Womack* or the separate crime of forcibly inducing falsehood.

We therefore conclude that the trial court did not err by refusing to give defense counsel's special instructions on forcibly inducing falsehood or by forbidding defense counsel to argue that defendant was guilty of forcibly inducing falsehood.

III

SENTENCING ERROR

On our own motion, we note one sentencing error.

As mentioned, the trial court struck two of the three prior prison term enhancements.  At sentencing, defense counsel noted the one remaining prior prison term enhancement and asked the trial court "to consider striking that or running [it] concurrent,

---

[5]     Defendant tries to flesh out this argument thus:  "[Defendant] waited nearly a month before phoning Chartier and asking her to change her story.  Because the incident had already been reported, Chartier could do little at that point to stop a complaint from being filed.  As any seasoned prosecutor would know, victims of domestic violence often change their stories.  Rarely, if ever, does this result in the non-filing or dismissal of charges."

Whether defendant *intended* to stop a complaint from being filed, however, is different from whether he was *likely* to stop a complaint from being filed.  Defendant, needless to say, was not a seasoned prosecutor; he may well have thought that getting Chartier to recant was all it would take.  Moreover, as long as that is what he intended to accomplish, then he had the necessary intent, even assuming he knew he was not likely to succeed.  Finally, one may well ask, if he did not intend to stop a complaint from being filed, what *did* he intend?

In any event, the bottom line is that defense counsel was free to make the same argument, in the same terms, to the jury as defendant is making now to us.

19

whatever the court has to do." The trial court imposed a sentence on this enhancement of one year, to be served concurrently.

A prior prison term enhancement, however, must be imposed consecutively, if at all. (Pen. Code, § 667.5, subd. (b); *People v. Savedra* (1993) 15 Cal.App.4th 738, 747.) It seems clear that, if the trial court had realized this, it would have stricken the enhancement instead. Accordingly, we will modify the judgment by striking the enhancement.

IV

DISPOSITION

The prior prison term enhancement is stricken. The judgment as thus modified is affirmed. The clerk of the superior court is directed to prepare an amended sentencing minute order and an amended abstract of judgment and to forward a certified copy of the amended abstract to the Department of Corrections and Rehabilitation. (Pen. Code, §§ 1213, subd. (a), 1216.)

CERTIFIED FOR PARTIAL PUBLICATION

RAMIREZ_____
P. J.


We concur:

MILLER_____
J.

SLOUGH_____
J.

20