Filed 2/22/22  P. v. Phillips CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>JOSHUA JOHN PHILLIPS,<br><br>    Defendant and Appellant. | F078526<br><br>(Super. Ct. No. MF012637A)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Kern County.  Eric Bradshaw, Judge.

Daniel G. Koryn, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Julie A. Hokans and Robert Gezi, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

**INTRODUCTION**

Joshua John Phillips (defendant) assaulted his former girlfriend, B.C., one night in Kern County.  B.C. sustained physical injuries from the attack.  Police arrested defendant

in B.C.'s home. She subsequently obtained a criminal protective order and served it on defendant.

A few days later, defendant called B.C. from jail in violation of the protective order and asked her not to "use this against" him in court. He apologized to B.C., told her he loved her, and promised to make it up to her.

An amended information charged defendant with (among other conduct) inflicting corporal injury on a person in a dating relationship (Pen. Code, § 273.5, subd. (a)) and dissuading the victim of a crime (§ 136.1, subd. (b)(2)). (Undesignated statutory references are to the Penal Code.) The information also alleged defendant suffered a prior serious felony conviction within the meaning of section 667, subdivision (a) and suffered six prior prison convictions within the meaning of section 667.5, former subdivision (b).

A jury convicted defendant of inflicting corporal injury on B.C. and dissuasion of a crime victim. Defendant admitted the prior serious felony conviction and the six prior prison convictions at a bifurcated trial on the enhancements. The trial court sentenced defendant to an aggregate prison term of 24 years.

Defendant raises two challenges concerning his conviction for dissuading a crime victim. First, he argues insufficient evidence supported the jury's verdict. Next, he claims the evidence required the trial court to sua sponte instruct on the lesser included offense of misdemeanor intimidation of a witness.

Defendant raises three additional issues related to his sentence. In light of Senate Bill No. 1393 (2017–2018 Reg. Sess.) (Senate Bill 1393), he asks us to remand the matter to the trial court to permit it to exercise its discretion to strike his prior serious felony enhancement. Additionally, defendant claims Senate Bill No. 136 (2019–2020 Reg. Sess.) (Senate Bill 136) requires striking the six prior prison term enhancements imposed. Finally, defendant claims the abstract of judgment should be corrected to properly reflect

2.

the trial court imposed the middle term for his conviction for inflicting corporal injury on B.C.

As explained below, we will remand the matter to permit defendant to seek relief under Senate Bill 1393 and Senate Bill No. 483 (2021–2022 Reg. Sess.) (Senate Bill 483), respectively. We otherwise affirm the judgment.

## FACTUAL BACKGROUND

The People charged defendant with assault with a deadly weapon (§ 245, subd. (a)(1); count 1), infliction of a corporal injury on another who was in a dating relationship with defendant (§ 273.5, subd. (a); count 2), felony dissuasion of a crime victim (§ 136.1, subd. (b)(2); count 3), and misdemeanor violation of a protective order (§ 166, subd. (c)(1); count 4)). With respect to count 2, the information alleged (among other matters) defendant committed a prior serious felony and suffered six prior prison convictions.

Defendant pled not guilty and denied the special allegations lodged against him.

A jury trial commenced on June 7, 2018. The prosecution and defense presented the following evidence:

### *Prosecution Case*

B.C. and defendant dated for over two years. On September 4, 2017, B.C. told defendant she wanted to break up. That night (or early the next day), while home alone, B.C. awoke to loud music outside her house. She found defendant banging on her front door and demanding B.C. to open it because he wanted to see who else was in her house. She let defendant inside. She detected a strong odor of alcohol on defendant.

Defendant searched through B.C.'s house. After this search, he began yelling and he grabbed B.C. by her neck. He applied pressure in a choking manner nine or 10 times. Defendant threatened to kill B.C. and then kill himself.

Defendant's attack moved to the kitchen. He held a knife and began gesturing with it while repeating his threat to kill B.C. and himself. He eventually pointed the knife toward B.C.'s abdomen. The knife got within six inches of B.C.'s side. This continued

3.

for 10 minutes. Defendant told B.C. he was going to stab her; she believed him and she crouched down trying to get away from him.

While B.C. was on the ground, defendant began punching her. His first punch hit B.C. in her head and caused profuse bleeding. Defendant punched B.C. several more times in her chest and upper body.

After defendant attempted to cut himself with the knife, he told her to leave, and B.C. ran to the end of her driveway. Defendant met her there and hugged her while in tears. He told B.C. he had a gun in his car and suddenly turned and ran toward his car.

B.C. ran down the road and hid. While hiding, she saw defendant drive around the corner in his car and she believed he was looking for her. She saw defendant go back toward her house. B.C. could hear banging noises from the direction of her house and the sounds of items being thrown around. Ultimately, B.C. found a couple sitting in a car and they used their phone to call the police.

Officer Steven Whiting arrived and contacted B.C. Officer Whiting observed blood all over her shirt, face, and hands. She seemed afraid and in shock.

Officer Whiting then approached B.C.'s house and observed a kitchen knife in the front yard. B.C. allowed the police to enter her home where they found defendant lying on his stomach on the couch. Officer Whiting grabbed defendant's arm and placed him in handcuffs.

One day after the incident, B.C. received stitches for the cut on her forehead at a Tehachapi hospital. Two days later, she underwent a forensic examination at Antelope Valley Hospital. Nurse Sylvia Fink recalled redness around B.C.'s neck she found consistent with strangulation, and she observed significant bruising on B.C.'s upper body. B.C. experienced pain, dizziness, and difficulty concentrating for several months after the attack.

On September 15, 2017, B.C. obtained a criminal protective order against defendant and served it on him.

4.

Two days later, defendant spoke with his sister over the phone while in jail. His sister proposed that she talk to B.C., and defendant encouraged her to "play nice" to see if B.C. would drop the restraining order. Defendant told his sister he believed he would not face charges if B.C. dropped the restraining order. Defendant told his sister to call B.C. because with "texting, there's proof …." He told his sister that "you gotta work it," "[y]ou just gotta do it good-sister," and "[t]he main thing is just get [B.C.] to knock it off." He also stated, "Otherwise, really, fuck her, man, let [my lawyer] deal with it."

Between September 17 and 19, 2017, defendant's sister called and texted B.C. about dropping the restraining order against defendant. Defendant's sister spoke nicely to B.C. and even stated she considered B.C. to be like a sister. Defendant's sister also suggested B.C. drop the charges against defendant. B.C. considered dropping the restraining order because of these communications.

Defendant called B.C. from jail on September 19, 2017. He asked her not to "use this" against him "in court." He told B.C. he blacked out, didn't "fuckin' remember half the shit," and promised not to drink. Defendant told B.C. he loved her. B.C. reminded defendant he continued to hit her after he drew blood. Defendant promised to "make it up" to B.C. and claimed, "I'm not any good in here." B.C. expressed her belief defendant and his sister were "playing games" with her, and defendant assured B.C., "I swear to God I would never play games with you. … I would never involve my sister to try to play games."

Jeri Darr also testified as a witness for the People. Darr is a social worker and case manager at Bakersfield Heart Hospital who has counseled, interacted, or spoken with over 2,000 victims of domestic violence.

Darr testified about the "cycle of violence" that keeps domestic violence victims in abusive relationships. Three factors typify this cycle. In the first "tension building" phase, the victim feels like "[having] to walk on eggshells," but no violence occurs. The "explosive phase" features physical violence ranging from shoving and breaking items to

5.

"overt horrific violence."  The final "honeymoon phase" is typified by expressions of remorse from the perpetrator and conduct embodying the "model partner."  Darr stated that when a perpetrator calls from jail using "honeymoon language," it might prompt a victim to recant.  On this point, Darr testified on the importance of "no contact" orders to reduce the opportunity for the perpetrator to influence the victim.

Finally, the parties stipulated to (1) defendant's 2010 conviction for corporal injury on a dating partner (M.G.) pursuant to section 273.5, subdivision (a), and (2) defendant's 2014 felony conviction for making criminal threats against M.G. pursuant to section 422.

*Defense Case*

Defendant testified he arrived at B.C.'s home around 10:00 p.m. on September 4, 2017.  B.C. and defendant agreed to end their relationship because he intended to move to Los Angeles for work and B.C. wanted to remain close to her children.  B.C. met defendant at her door and they sat on her porch drinking and smoking cigarettes.  Defendant went to sleep and awoke to B.C. reading messages on his phone.  B.C. asked him about two names in his phone and threw it at him.

She ran out of the master bedroom and into the kitchen, destroying picture frames in her hallway in the process.  Defendant attempted to calm B.C. down because he was out on bail in a "non-violent case" and wanted to avoid law enforcement arriving.  Defendant grabbed B.C.'s arms and asked her to "calm down" because "this is crazy" and B.C. was "going to get the cops" called to the home.

B.C. ran down the street.  Defendant decided to lay on the couch because he needed to work in a few hours.  He fell asleep and awoke to handcuffs.

Defendant denied hitting, slapping, or pushing B.C. down.  He admitted grabbing her arms.  He professed no knowledge of the cut on B.C.'s head until he became aware of it at a preliminary hearing.

Defendant acknowledged he was served with a no contact restraining order on September 15 in Mojave.

Defendant knew the restraining order prohibited him from contacting B.C., but he did so anyway. He admitted he lied to B.C. when he called her from the jail and told her he had blacked out. He acknowledged he called B.C. to "get her on [his] side" for the case pending against him.

*Verdict and Sentencing*

A jury found defendant guilty of inflicting corporal injury on B.C. (count 2), dissuading a victim of a crime (count 3), and violation of a domestic violence restraining order (count 4). With respect to count 2, the jury found true an allegation defendant inflicted great bodily injury under circumstances involving domestic violence.

The trial court bifurcated proceedings on defendant's prior conviction enhancements and the on-bail enhancement. Defendant admitted he committed an additional felony offense within the meaning of section 12022.1. He admitted to a strike prior and that he suffered a conviction for a prior serious felony within the meaning of section 667, subdivision (a). Defendant also admitted to six prison priors.

On November 29, 2018, the trial court sentenced defendant to an aggregate prison term of 24 years. This sentence included the serious felony enhancement and six prior prison term enhancements on count 2. The trial court also imposed the middle term of four years on count 3.

Defendant timely filed his notice of appeal on December 7, 2018.

## DISCUSSION

I. **Sufficient Evidence Supports Defendant's Conviction for Dissuading a Crime Victim**

Defendant first challenges his conviction under section 136.1, subdivision (b)(2) (count 3), claiming insufficient evidence supports the jury's finding of guilt. He asks us

to reverse the conviction.  We conclude sufficient evidence supports defendant's conviction.

### A.    Standard of Review

A challenge to the sufficiency of the evidence triggers the "substantial evidence" test.  (*People v. Cuevas* (1995) 12 Cal.4th 252, 260.)  Our role here is "limited."  (*People v. Ceja* (1993) 4 Cal.4th 1134, 1138.)  We must "'"review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence … such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt."'"  (*People v. Prince* (2007) 40 Cal.4th 1179, 1251, quoting *People v. Hillhouse* (2002) 27 Cal.4th 469, 496.)  This means evidence that is reasonable, credible, and of solid value.  (*People v. Gonzalez and Soliz* (2011) 52 Cal.4th 254, 294.)  Under this review, "we presume in support of the judgment '"the existence of every fact the trier could reasonably deduce from the evidence."'"  (*People v. Nelson* (2016) 1 Cal.5th 513, 550.)  The same considerations apply irrespective of whether the evidence is direct or circumstantial.  (*Ceja*, *supra*, at p. 1138.)  Moreover, "'"[i]f the circumstances reasonably justify the trier of fact's findings, the opinion of the reviewing court that the circumstances might also be reasonably reconciled with a contrary finding does not warrant reversal of the judgment."'"  (*People v. Bean* (1988) 46 Cal.3d 919, 933.)

### B.    Applicable Law

Section 136.1 pertains to intimidation of witnesses and victims.  (See *People v. Brown* (2016) 6 Cal.App.5th 1074, 1079.)  Taken as a whole, the statute "defines a family of 20 related offenses." (*People v. Torres* (2011) 198 Cal.App.4th 1131, 1137.)

Relevant here, section 136.1, subdivision (b)(2) describes the "preventing prosecution" offense.  (*People v. Brown*, *supra*, 6 Cal.App.5th at p. 1079.)  The statute states:

> "(b) Except as provided in subdivision (c), every person who attempts to prevent or dissuade another person who has been the victim of a

crime or who is witness to a crime from doing any of the following is guilty of a public offense and shall be punished by imprisonment in a county jail for not more than one year or in the state prison: [¶] … [¶]

"(2) Causing a complaint, indictment, information, probation or parole violation to be sought and prosecuted, and assisting in the prosecution thereof." (§ 136.1, subd. (b)(2).)

Section 136.1, subdivision (b)(2) is a "wobbler" offense punishable as either a felony or misdemeanor. (*People v. McElroy* (2005) 126 Cal.App.4th 874, 880 [describing language of § 136.1, subd. (b) as "classic" wobbler language]; see *People v. Fernandez* (2003) 106 Cal.App.4th 943, 950–951 (*Fernandez*) [same].)

Accordingly, a charge under section 136.1, subdivision (b)(2) does not require proving defendant acted maliciously. (See *People v. Brackins* (2019) 37 Cal.App.5th 56, 68 [stating § 136.1, subd. (b) offenses do not have malice element]; see also *People v. Torres*, *supra*, 198 Cal.App.4th at p. 1138 ["the subdivision (b) offenses do not expressly include the mental element of knowingly and maliciously"].) However, the prosecution must prove intent—namely, the defendant "specifically intended that his acts would prevent or dissuade the victim or witness" from taking one of the actions described in section 136.1, subdivision (b). (*People v. Cook* (2021) 59 Cal.App.5th 586, 590 (*Cook*).)

### C.    Analysis

The jury received instructions on this charge in accordance with CALCRIM No. 2622. Those instructions required the prosecution to prove the following elements to convict under section 136.1, subdivision (b)(2): (1) defendant maliciously[1] tried to

---

[1]The jury instructions included the term "maliciously," but the prosecution did not need to prove malice as described above. (*People v. Brackins*, *supra*, 37 Cal.App.5th at p. 68.)

The same situation arose in *Cook* —the jury was instructed that to convict the defendant of a violation of section 136.1, subdivision (b)(1) it had to find the defendant acted maliciously, knowingly, and with specific intent. (*Cook*, *supra*, 59 Cal.App.5th at p. 591, fn. 3.) The Court of Appeal noted:

"The court used a version of CALCRIM No. 2622 that gave trial courts discretion to include all three elements in the instruction, purportedly because an 'argument can be made that the knowledge and malice requirements apply to all violations of

9.

prevent or discourage B.C. from cooperating or providing information so that a complaint or information could be sought and prosecuted, and from helping prosecute that action; (2) B.C. was a crime victim; and (3) defendant knew he was trying to prevent or discourage B.C. from cooperating or providing information so that a complaint or information could be sought and prosecuted and from helping prosecute that action, and he intended to do so.

We conclude sufficient evidence supports the conviction. Beginning with element 1, defendant contacted B.C. from jail on September 19, 2017. The record indicates this contact occurred before the prosecution filed an information in this case. The jury heard the tape-recorded conversation where defendant asked B.C. "[not to] use this against [him]" and that he was "not any good" in jail. At trial, he acknowledged he called B.C. to "get her on his side." B.C. testified defendant's jailhouse call caused her to question whether to cooperate with law enforcement. A jury could reasonably deduce from this evidence defendant called B.C. from jail (in violation of his restraining order) to discourage her from cooperating with law enforcement and to prevent the information from being filed.

Sufficient evidence supports element 2—that B.C. was a crime victim. B.C. testified defendant grabbed her by the neck and squeezed nine or 10 times. He pointed a knife to B.C.'s abdomen and brought it within six inches—while threatening to kill her and himself. He punched B.C. so hard she bled. Officer Steven Whiting testified he first

Penal Code section 136.1(b), not just those charged with the additional sentencing factors under subdivision (c).' (Judicial Council of Cal., Criminal Jury Instns. (2020) Bench Notes to CALCRIM No. 2622.) The current version of the instruction omits the malice element as well as the above quoted bench note." (*Cook*, *supra*, 59 Cal.App.5th at p. 591, fn. 3.)

The *Cook* court did not address the defendant's argument related to knowledge and malice because the statute did not require the prosecution to prove he acted knowingly and maliciously. (*Cook*, *supra*, 59 Cal.App.5th at p. 591.) Here, defendant's briefing does not challenge whether the prosecution adequately proved malice.

encountered B.C. covered in blood and in a state of shock. Additionally, Nurse Fink testified she examined B.C. two days after the attack. Nurse Fink took pictures of B.C.'s injuries that were presented at trial. Those pictures revealed stitches on B.C.'s forehead, redness around her neck, a blister on her lip, and bruising throughout her body. From this evidence, a jury could reasonably conclude B.C. was the victim of an assault at the hands of defendant.

Finally, we conclude sufficient evidence supports element 3. Defendant's jailhouse conversation with his sister that was presented to the jury is particularly probative. That conversation—two days before his call to B.C.—illuminates defendant's belief he would not face charges if B.C. dropped the restraining order. Defendant instructed his sister to "play it right" to get B.C. to "knock it off." Moreover, during his call with B.C., defendant never denied hitting her, but promised to "make it up" to B.C. Additionally, the jury heard expert testimony from Jeri Darr who testified that jailhouse calls from domestic violence perpetrators often result in victims recanting their story. From this evidence, a jury could reasonably infer defendant intended to discourage B.C. from cooperating with law enforcement so that an information would not be filed against him.

Defendant argues there was "insufficient evidence to support a finding that [defendant] attempted to dissuade or prevent [B.C.] from reporting victimization or testifying at any hearing." Defendant cites the dictionary definitions of "dissuade" and "prevent" to argue there was no evidence he "attempted to stop, advised against, or otherwise attempted to prevent [B.C.] from reporting or testifying about the alleged assault."

This argument is unconvincing because it refers to separate criminal conduct. Dissuading (or attempting to dissuade) a witness from *testifying* is penalized under section 136.1, subdivision (a). (See § 136.1, subd. (a)(1)–(2); see also *People v. Torres*, *supra*, 198 Cal.App.4th at p. 1138 ["Subdivision (a)(1) proscribes knowingly and

11.

maliciously preventing or dissuading any witness or victim from attending or giving testimony at any trial, proceeding, or inquiry authorized by law, and subdivision (a)(2) proscribes attempting to do so"].)  Defendant did not face charges under this subdivision of the statute.  Therefore, the prosecution did not need to produce any evidence defendant attempted to dissuade B.C. from testifying.

The same is true regarding defendant's argument on whether there was sufficient evidence to prove defendant dissuaded B.C. from *reporting* the assault.  A separate subdivision—subdivision (b)(1) of section 136.1—addresses this crime.  (*People v. Velazquez* (2011) 201 Cal.App.4th 219, 232 (*Velazquez*) [§ 136.1, subd. (b)(1) "makes it a crime to attempt to dissuade a crime victim from '[m]aking any report of that victimization to any peace officer … or to any judge"].)  The prosecution did not charge defendant with attempting to dissuade B.C. from reporting the assault and so did not need to prove that fact.[2]

At its crux, defendant's argument improperly conflates the subdivisions of section 136.1 and, by extension, the evidence required to sustain a conviction under subdivision (b)(2).  Therefore, we find it unconvincing.

_____

[2]In *Fernandez*, Division Six of the Second Appellate District wrote "section 136.1, subdivision (b) punishes a defendant's pre-arrest efforts to prevent a crime from being reported to the authorities." (*Fernandez*, *supra*, 106 Cal.App.4th at p. 950.)  It cited our opinion in *People v. Hallock* (1989) 208 Cal.App.3d 595, 605–607 (*Hallock*) to support this contention. (*Fernandez*, at p. 950.)

In *Velazquez*, Division Four of the Second Appellate District characterized the statement in *Fernandez* as dictum and expressed disagreement with it.  (*Velazquez*, *supra*, 201 Cal.App.4th at p. 232.)

We agree with *Velazquez* that the statutory language of section 136.1, subdivision (b) does not limit the offense to "pre-arrest" actions.  We also do not think our opinion in *Hallock* supports the statement made in *Fernandez*.  Rather, in *Hallock*, our court noted "[s]ubdivision (b) prohibits preventing or dissuading a witness or victim from (1) reporting the victimization; (2) causing a complaint or similar charge to be sought; and (3) arresting or causing or seeking the arrest of any person in connection with such victimization." (*Hallock*, *supra*, 208 Cal.App.3d at p. 606.)

Defendant also directs us to *People v. Womack* (1995) 40 Cal.App.4th 926 (*Womack*) and argues defendant's "alleged attempts to influence [B.C.'s] testimony simply cannot be conflated into a form of dissuasion, as this is counter to the express language of the statute and would render section 137 superfluous."

In *Womack*, the Court of Appeal struck a conviction pursuant to section 137, subdivision (b) because it deemed that conviction inconsistent with the defendant's conviction for attempted murder of a witness who was about to testify against another defendant. (*Womack*, *supra*, 40 Cal.App.4th at p. 934.) The Court of Appeal concluded section 137 is inconsistent with the intent to kill because the statute contemplates the perpetrator "will attempt to *influence* the testimony given." (*Womack*, at p. 930.) And "[t]he two intents are mutually exclusive. One cannot influence, or shape, the testimony of a witness by preventing that witness from testifying." (*Id.* at pp. 931–932.) The *Womack* court also distinguished section 137 from certain sections of 136.1 by stating the latter section deals with situations where "the perpetrator will prevent or dissuade a prospective witness from *giving* testimony." (*Id.* at p. 931.) Whereas "[t]he entire sense of … section 137 is that testimony will be given, but the perpetrator will attempt to *influence* the testimony given." (*Id.* at p. 930.)

*Womack*'s discussion of the distinction between section 137, on one hand, and sections 136.1 and 138, on the other, has limited utility here. For one, *Womack*'s analysis focused on efforts to prevent or influence testimony. Again, the question of whether defendant attempted to prevent, discourage, or influence *any testimony* from B.C. is not relevant because it is not an element of a charge under section 136.1, subdivision (b)(2). Additionally, this appeal requires us to analyze whether sufficient evidence supported the conviction under 136.1, subdivision (b)(2). In sum, we do not find *Womack* applicable to this case because it dealt with issues different from the matter before us.

13.

Therefore, sufficient evidence supports defendant's conviction under section 136.1, subdivision (b)(2). Defendant does not convince us otherwise because his arguments largely address issues unrelated to this case.

Accordingly, we reject defendant's contention and need not address his argument that double jeopardy principles would prevent a retrial.

## II. The Trial Court Did Not Prejudicially Err by Not Sua Sponte Instructing the Jury on Certain Alleged Lesser Included Offenses

Defendant next asserts the trial court prejudicially erred in failing to sua sponte instruct the jury on certain alleged lesser included offenses he contends were supported by the evidence. We disagree.

### A. Applicable Law and Standard of Review

"California law requires a trial court, sua sponte, to instruct fully on all lesser necessarily included offenses supported by the evidence." (*People v. Breverman* (1998) 19 Cal.4th 142, 148–149.) "There must be, at a minimum, substantial evidence demonstrating the lesser offense was committed." (*People v. Wilson* (2021) 11 Cal.5th 259, 295, citing *People v. Westerfield* (2019) 6 Cal.5th 632, 718.) In this context, substantial evidence means evidence that a reasonable jury could find persuasive. (*Wilson*, at p. 295.)

A claim the trial court erroneously failed to instruct on a lesser included offense receives de novo review. (*People v. Licas* (2007) 41 Cal.4th 362, 366; see *People v. Cole* (2004) 33 Cal.4th 1158, 1215.)

"Whether a trial court commits error by omitting an instruction on a lesser included offense depends not only on whether the evidence supports the commission of an alternative crime, but whether that alternative crime constitutes a 'lesser included offense' …." (*People v. Gonzalez* (2018) 5 Cal.5th 186, 197 [holding trial court erred when it failed to instruct on lesser included offense of murder with malice aforethought].) The California Supreme Court applies two tests to determine whether an offense is a

lesser included offense of another. (*People v. Reed* (2006) 38 Cal.4th 1224, 1227.) The first "elements test" dictates that "one offense is another's 'lesser included' counterpart if all the elements of the lesser offense are *also* elements of the greater offense." (*Gonzalez*, *supra*, at p. 197.) The second "accusatory pleading" test provides that "a crime is another's 'lesser included' offense if all of the elements of the lesser offense are also found in the *facts alleged* to support the greater offense in the accusatory pleading.'" (*Ibid.*)

### B. Analysis

Defendant asserts the trial court committed prejudicial error when it failed to sua sponte instruct the jury on "misdemeanor intimidation" (§ 136.1, subd. (b)(1)), which, he contends, is a "lesser included offense" of the section 136.1, subdivision (b)(2) charged offense. Defendant also classifies a violation of subdivision (b)(2) as a "misdemeanor" offense and claims a felony violation of section 136.1, subdivision (c)(1) "includes all the elements of a misdemeanor violation of subdivision (b)(2)."

We find these arguments unpersuasive for several reasons. First, the crime of witness intimidation under section 136.1, subdivision (b)(1) is not a lesser included offense of a violation under section 136.1, subdivision (b)(2). Beginning with the "elements" test, the two subdivisions address different crimes with distinct elements. The Second Appellate District explained this difference in *Velazquez*, *supra*, 201 Cal.App.4th 219. There, the defendant challenged the sufficiency of the evidence of his conviction under subdivision (b)(2) because he claimed section 136.1, subdivision (b) applies "only to prearrest efforts to dissuade a witness from reporting a crime, rather than attempts to persuade a witness to drop charges after the perpetrators have been arrested, as in this case." (*Velazquez*, at p. 232.) Affirming the judgment, the panel wrote:

> "Unlike section 136.1, subdivision (b)(1), which makes it a crime to attempt to dissuade a crime victim from '[m]aking any report of that victimization to any peace officer … or to any judge,' subdivision (b)(2)

15.

makes it a crime to attempt to dissuade a victim or witness from '[c]ausing a complaint, indictment, information, probation or parole violation to be sought and prosecuted, and assisting in the prosecution thereof.' Subdivision (b)(2) clearly encompasses more than prearrest efforts to dissuade, inasmuch as it includes attempts to dissuade a victim from causing a complaint or information to be prosecuted or assisting in that prosecution." (*Id*. at pp. 232–233.)

Put more succinctly, subdivision (b)(1) of section 136.1 addresses acts meant to deter reporting a crime while subdivision (b)(2) addresses acts meant to prevent prosecution of a crime. (See *Cook*, *supra*, 59 Cal.App.5th at p. 590 [§ 136.1, subd. (b)(1) pertains to attempts to dissuade a witness or crime victim "from making any report of [the] victimization to any peace officer or other designated official"]; *People v. Brown*, *supra*, 6 Cal.App.5th at p. 1082 [under § 136.1, subd. (b)(2), "the perpetrator must attempt to prevent a person from causing a charging document to be sought and prosecuted *and* from assisting in the prosecution"].) Therefore, a violation of subdivision (b)(2) can occur without necessarily violating subdivision (b)(1). Thus, under the "elements" test, subdivision (b)(1) of section 136.1 is not a lesser included offense of subdivision (b)(2). (See *People v. Birks* (1998) 19 Cal.4th 108, 117 [an offense qualifies as a lesser included offense under the elements test if the "greater [offense] cannot be committed without also committing the lesser"].)

Even if subdivision (b)(1) of section 136.1 could be considered a lesser included offense of subdivision (b)(2), we would still find no error because there was no evidence defendant committed the offense in subdivision (b)(1). Defendant did not attempt to prevent B.C. from making a report of her assault. Indeed, by the time defendant called B.C. from jail, he had already been arrested for assaulting her and was awaiting prosecution. Without substantial evidence that defendant committed the offense in subdivision (b)(1), the trial court was under no duty to instruct on that charge as a lesser included offense. (*People v. Wilson*, *supra*, 11 Cal.5th at p. 295 [trial court's duty to sua

16.

sponte instruct on a lesser included offense arises only if there is substantial evidence sufficient to deserve consideration of the jury].)

Defendant's argument finds even less support under the "accusatory pleading" test. The amended information alleged the following on count 3:

> "On or about and between September 15, 2017 to September 19, 2017, [defendant], did willfully and unlawfully attempt to prevent or dissuade [B.C.], a victim and/or witness of a crime from causing a complaint, indictment, information, probation or parole violation to be sought and prosecuted, and in assisting in the prosecution thereof, in violation of … section 136.1(b)(2)." (Some capitalization omitted.)

On its face, the information did not allege defendant attempted to dissuade or prevent B.C. from making a report of the assault or any other conduct that falls within the scope of subdivision (b)(1).

Furthermore, we note a violation of section 136.1, subdivision (b)(1) is not a per se misdemeanor offense as defendant contends. Rather, a violation of subdivision (b)(1), like a violation of subdivision (b)(2), is a wobbler that may be punished as a felony or as a misdemeanor. (*People v. McElroy*, *supra*, 126 Cal.App.4th at p. 880.)

Finally, defendant's discussion of section 136.1, subdivision (c) misses the mark. Section 136.1, subdivision (c) prohibits attempts to dissuade witnesses or crime victims accompanied by aggravating factors such as force or threats of force. (*People v. Torres*, *supra*, 198 Cal.App.4th at p. 1138.) But subdivision (c) is not at issue in this case and so defendant's point here is irrelevant. The prosecution did not allege or try to prove any of the aggravating circumstances contained in subdivision (c). Therefore, defendant's discussion related to section 136.1, subdivision (c) is misplaced.

Accordingly, for the above reasons, we reject defendant's second contention.

## III. Sentencing Issues

Defendant also raises three issues concerning his sentence that the People do not oppose. He claims Senate Bill 1393 entitles him to remand for the trial court to consider

17.

dismissing his prior serious felony enhancement pursuant to section 667, subdivision (a)(1). The People concede remand is appropriate on this basis. Next, defendant asks us to strike his six prior prison conviction enhancements (§ 667.5, former subd. (b)) because of Senate Bill 136. The People also agree defendant is entitled to this relief. Finally, defendant asks us to correct the abstract of judgment to reflect the trial court imposed the middle term on his conviction for inflicting corporal injury on B.C. (count 2). Again, the People agree with this contention.

First, we agree to remand the case so defendant may seek the ameliorative benefits of Senate Bill 1393. Senate Bill 1393 amended section 667, subdivision (a)(1), and section 1385 to allow a trial court to exercise its discretion to strike a prior serious felony conviction (where it previously had none). (See *People v. Stamps* (2020) 9 Cal.5th 685, 692; see also Stats. 2018, ch. 1013, §§ 1, 2, eff. Jan. 1, 2019.) The California Supreme Court has determined Senate Bill 1393 applies retroactively pursuant to the rule set forth in *In re Estrada* (1965) 63 Cal.2d 740. (*Stamps*, *supra*, at pp. 698–699.) Therefore, Senate Bill 1393 applies to all nonfinal judgments as of January 1, 2019—the statute's operative date. (See *People v. Jones* (2019) 32 Cal.App.5th 267, 273.)

The trial court sentenced defendant on November 29, 2018, when former section 667, subdivision (a) required the trial court to impose the prior serious felony enhancement without exception. Because defendant's appeal is presently before us, the judgment is not final. (See *People v. Jennings* (2019) 42 Cal.App.5th 664, 682 ["For purposes of the *Estrada* rule, a judgment is not final so long as courts may provide a remedy on direct review"].) Therefore, we will remand to permit the trial court to exercise its discretion pursuant to Senate Bill 1393. (*People v. Stamps*, *supra*, 9 Cal.5th at p. 709.)

Next, we also agree with the parties that Senate Bill 136 requires defendant's 6 one-year prior prison term enhancements be stricken. Via Senate Bill 136 (enacted Oct. 8, 2019), the Legislature amended section 667.5, former subdivision (b) to apply a

one-year enhancement only if "'a defendant served a prior prison term for a sexually violent offense as defined in Welfare and Institutions Code section 6600, subdivision (d).'" (*People v. Gastelum* (2020) 45 Cal.App.5th 757, 772.) Pursuant to the *Estrada* rule, Senate Bill 136 "applies retroactively to all cases not yet final as of its January 1, 2020 effective date." (*People v. Jennings*, *supra*, 42 Cal.App.5th at p. 682, citing *In re Estrada*, *supra*, 63 Cal.3d 740.)

Moreover, Senate Bill 483 became effective January 1, 2022. In Senate Bill 483, the Legislature declared its intent "to retroactively apply … [Senate Bill 136] to all persons currently serving a term of incarceration in jail or prison for [the section 667.5, subdivision (b) enhancement]." (Stats. 2021, ch. 728, § 1.) The bill adds section 1171.1, subdivision (a) to the Penal Code and states "[a]ny sentence enhancement that was imposed prior to January 1, 2020 pursuant to subdivision (b) of section 667.5 [except for sexually violent offenses] is legally invalid." (Stats. 2021, ch. 728, § 3, subd. (a).) It calls for resentencing for a defendant whose sentence includes the now legally invalid enhancement. (*Id.*, subd. (c).) Furthermore, resentencing cannot result in a longer sentence than the one originally imposed. (*Id.*, subd. (d)(4).) The parties may waive a resentencing hearing. (*Id.*, subd. (e).)

Defendant is entitled to the benefit of Senate Bill 136 and Senate Bill 483. His six prior prison terms arise from respective convictions for (1) felony evasion of process (§ 1320.5), (2) resisting an officer (§ 69), (3) driving under the influence in 2005 (Veh. Code, §§ 23152, 23550), (4) corporal injury to a dating partner in 2010 (§ 273.5), (5) driving under the influence in 2011 (Veh. Code, §§ 23152, 23550), and (6) driving under the influence in 2014 (Veh. Code, § 23152, 23550). None of these constitute a "sexually violent offense" within the meaning of Welfare and Institutions Code section 6600, subdivision (d). Therefore, Senate Bill 136 requires his prior prison enhancements be stricken on remand and Senate Bill 483 provides certain parameters for defendant's resentencing.

19.

Finally, the record indicates the trial court intended to sentence defendant to the middle term on count 2, doubled, for six years, but the abstract of judgment incorrectly reflects the trial court imposed the upper term of six years.

Normally, when the abstract of judgment does not accurately reflect the oral pronouncement of judgment, it is a clerical error that can be corrected on appeal. (See *People v. Jones* (2012) 54 Cal.4th 1, 89.) Moreover, an appellate court is authorized to order the trial court to correct the abstract of judgment. (*People v. Mitchell* (2001) 26 Cal.4th 181, 188 [when a discrepancy arises between the judgment and the abstract of judgment "the appellate court itself should order the trial court to correct the abstract of judgment"].)

However, this matter is being remanded for resentencing for the reasons discussed above, which will require a new abstract of judgment to reflect the new sentence. This issue is effectively moot.

## DISPOSITION

The matter is remanded for resentencing so defendant may seek relief pursuant to Senate Bill 1393 and for the court to strike defendant's prior prison enhancements in accordance with Senate Bill 483. In all other respects, the judgment is affirmed.


PEÑA, J.

WE CONCUR:


LEVY, Acting P. J.


MEEHAN, J.


20.