# IN THE SUPREME COURT OF CALIFORNIA

THE PEOPLE,
Plaintiff and Respondent,

v.

RAYMOND GREGORY REYNOZA,
Defendant and Appellant.

S273797

Sixth Appellate District
H047594

Santa Clara County Superior Court
C1775222

April 22, 2024

Chief Justice Guerrero authored the opinion of the Court, in which Justices Corrigan, Liu, Kruger, Groban, Jenkins, and Evans concurred.

PEOPLE v. REYNOZA

S273797


Opinion of the Court by Guerrero, C. J.


We granted review in this case to interpret a witness dissuasion statute. Penal Code section 136.1, subdivision (b)(2) makes it a crime to attempt to dissuade a victim or witness from "[c]ausing a complaint . . . to be sought and prosecuted, *and* assisting in the prosecution thereof."[1] (Italics added.) A jury found defendant Raymond Gregory Reynoza guilty of violating this statute based on actions that occurred entirely *after* the complaint in the underlying criminal case had been filed.

The question before us is whether section 136.1(b)(2) supports this *disjunctive* interpretation — in which the statute independently applies where a defendant dissuades a witness from "assisting in the prosecution" of a case after the charging document has already been filed — or whether a *conjunctive* interpretation precludes a conviction under such circumstances. On the one hand, the word "and," which joins the subject clauses of section 136.1(b)(2), is ordinarily used as a conjunction (*In re C.H.* (2011) 53 Cal.4th 94, 101). On the other hand, the word "and" also "is sometimes, in a fair and rational construction of a statute, to be read as if it were *or*, and taken disjunctively" (*People v. Pool* (1865) 27 Cal. 572, 581 (*Pool*)), which would lead us to apply section 136.1(b)(2) to situations where a defendant

_____

[1] Subsequent undesignated statutory references are to the Penal Code. We refer to section 136.1, subdivision (b)(2) as section 136.1(b)(2).

dissuades a witness from "assisting in the prosecution" of a case only after a charging document has already been filed.

After considering the text, statutory context, legislative history, and the experiences of other jurisdictions when faced with similar statutory language, we conclude that section 136.1(b)(2) is equally susceptible to both the conjunctive and disjunctive constructions. Accordingly, the rule of lenity counsels in favor of adopting the "interpretation more favorable to the defendant." (*People v. Avery* (2002) 27 Cal.4th 49, 57 (*Avery*).) Here, that is the conjunctive construction, which does not permit a conviction to be based solely on proof of dissuasion from "assisting in the prosecution" of an already-filed charging document.

Because there is no dispute that defendant's conduct amounted to, at most, dissuasion after a complaint was filed, we affirm the judgment of the Court of Appeal reversing his conviction.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Defendant and two others (Guillermo Cervantes and Cesar Chavez) were charged with murder (§ 187) and dissuading a witness (§ 136.1(b)(2))[2] with allegations that the dissuasion was "accompanied by force" (§ 136.1, subd. (c)(1)) and done "in furtherance of a conspiracy" (*id.*, subd. (c)(2)). The prosecution's theory was that defendant was trying to dissuade

---

[2] The parties stipulated, and the jury was instructed that "[t]he phrases 'Witness Intimidation,' 'Intimidating a Witness,' and 'Witness Dissuasion' have the same meaning." We use variations of these terms interchangeably. And for convenience we occasionally use the term "witness" rather than "witness or victim," although the statute includes both terms.

a witness, Rafael Cornejo, in a criminal case against defendant's brother, Francisco Rosales. We briefly summarize the underlying criminal case involving defendant's brother, and the instant case of witness dissuasion.

In February 2017, Gilroy police arrested Rosales, Cornejo, and Benjamin Valladares after finding an unregistered firearm in their vehicle. In April, Rosales, Cornejo, and Valladares were charged with misdemeanor possession of a firearm. Valladares was also charged with one felony count of assault with a firearm and one misdemeanor count of causing a firearm to be carried in a vehicle. Between April and June, these three defendants made several appearances at the Morgan Hill courthouse — including on June 15, when one of the defendants in this witness dissuasion case (Cesar Chavez) and his brother (Gilbert Chavez) attended despite not having any business before the court.

The charged witness dissuasion in this case occurred one week later outside a bar in San Jose. Cornejo and Valladares were drinking in the bar when the manager warned Valladares that a group of men were outside. The manager gave this warning because there had been an incident at the bar a few weeks earlier involving Valladares and one of the men outside. When Valladares went outside to see if everything was all right, someone asked him, "Where's your bitch-ass uncle at?" (Valladares considered Cornejo to be his uncle.) Valladares went back inside and told Cornejo not to go outside but Cornejo disregarded the warning.

The group outside — which included defendant, Chavez (who had gone to the Morgan Hill courthouse the week before), and Cervantes — approached Cornejo in the parking lot. A bouncer at the bar who had approached the men heard someone

say "[d]rop the charges" and "it will be all good" or "[y]ou have nothing to worry about." Valladares then heard a member of defendant's group say, "[W]e don't fuck with snitches." Cervantes then punched Cornejo once in the head. Cornejo fell to the ground, struck his head on the pavement, and died hours later from blunt force trauma to the head and acute alcohol intoxication.

The jury found defendant not guilty of murder and guilty of witness dissuasion, found the dissuasion in furtherance of a conspiracy allegation true, and found the dissuasion accompanied by force allegation not true. The trial court sentenced defendant to two years in prison, which the court deemed satisfied by defendant's presentence custody credits, and placed him on parole for three years.

Defendant appealed, challenging the sufficiency of the evidence supporting his conviction and the jury's true finding on the conspiracy allegation. He argued that section 136.1(b)(2) "includes two elements, first, that the witness is being dissuaded from '[c]ausing a complaint . . . to be sought and prosecuted' *and* second, 'assisting in the prosecution thereof.' " (Boldface omitted.) He maintained the evidence was insufficient to support either ostensible element. As to the first ostensible element, defendant argued "[t]here was no substantial evidence supporting the theory that Cornejo was going to 'cause' any criminal actions to be sought in [the Morgan Hill] case" because "charges were already brought in that case, and several court appearances had already taken place" by the time of the incident leading to Cornejo's death. Thus, according to defendant, there was an "impossibility of meeting the first element." (Boldface omitted.)

4

The Court of Appeal agreed that section 136.1(b)(2) requires proof that the defendant attempted to prevent or dissuade another person from causing an accusatory pleading to be filed. (*People v. Reynoza* (2022) 75 Cal.App.5th 181, 189 (*Reynoza*).)[3] The court explained that "section 136.1(b)(2) requires proof that, among other things, the defendant attempted to prevent or dissuade another person from causing a complaint, indictment, information, probation or parole violation to be filed. If the defendant was aware the relevant charging document had already been filed, and the defendant did not attempt to prevent or dissuade the filing of any amended or subsequent charging document, the defendant has not violated section 136.1(b)(2)." (*Reynoza*, at p. 189.) The court further explained that "[o]ther statutory provisions prohibit attempts to dissuade victims or witnesses where charges have already been filed." (*Ibid.*, citing §§ 136.1, subd. (a)(1) & (2) [dissuasion of a witness from testifying or attending trial], 137, subd. (c) [attempting to influence testimony or information given to law enforcement].)

In so holding, the *Reynoza* court expressly disagreed with *People v. Velazquez* (2011) 201 Cal.App.4th 219 (*Velazquez*), which stated that section 136.1(b)(2) "clearly encompasses more than prearrest efforts to dissuade, inasmuch as it includes attempts to dissuade a victim from causing a complaint . . . to be

---

[3] Because the Court of Appeal found insufficient evidence on the first ostensible element of section 136.1(b)(2), the court did not reach defendant's argument that the evidence was also insufficient to establish the second ostensible element or the conspiracy finding. (*Reynoza, supra*, 75 Cal.App.5th at p. 185, fn. 2.)

prosecuted *or assisting in that prosecution.*" (*Velazquez*, at p. 233, italics added.)

We granted review to determine whether section 136.1(b)(2) requires proof of an attempt to dissuade a witness from causing a charging document to be sought and prosecuted — as the court below held — or whether the statute also independently applies where a defendant dissuades a witness only from "assisting in the prosecution" of a case *after* the charging document has already been filed.

## II.   DISCUSSION

The Attorney General contends the Court of Appeal erred in reversing defendant's conviction on the basis of insufficient evidence.  Although we ordinarily review such challenges under the deferential substantial evidence standard (*People v. Zamudio* (2008) 43 Cal.4th 327, 357), because the Court of Appeal's ruling is based on the interpretation of section 136.1(b)(2), we review that legal determination de novo (*People v. Lewis* (2021) 11 Cal.5th 952, 961).  " 'When we interpret a statute, "[o]ur fundamental task . . . is to determine the Legislature's intent so as to effectuate the law's purpose. We first examine the statutory language, giving it a plain and commonsense meaning. . . .  If the language is clear, courts must generally follow its plain meaning unless a literal interpretation would result in absurd consequences the Legislature did not intend.  If the statutory language permits more than one reasonable interpretation, courts may consider other aids, such as the statute's purpose, legislative history, and public policy." [Citation.]  "Furthermore, we consider portions of a statute in the context of the entire statute and the statutory scheme of which it is a part, giving significance to every word, phrase,

sentence, and part of an act in pursuance of the legislative purpose." ' " (*City of San Jose v. Superior Court* (2017) 2 Cal.5th 608, 616–617 (*City of San Jose*).)

### A. The Text and Statutory Context of Section 136.1(b)(2) Support Both a Conjunctive and a Disjunctive Construction

Section 136.1, subdivision (b) states in relevant part: "[E]very person who attempts to prevent or dissuade another person who has been the victim of a crime or who is witness to a crime from doing any of the following is guilty of a public offense and shall be punished by imprisonment in a county jail for not more than one year or in the state prison: [¶] . . . [¶] (2) Causing a complaint, indictment, information, probation or parole violation to be sought and prosecuted, and assisting in the prosecution thereof."[4] The crux of the issue before us is whether the connecting "and" should be read conjunctively, as defendant contends, or whether it should be read disjunctively, as the Attorney General contends. Under the latter disjunctive interpretation, it is not necessary to establish that any dissuasion occurred before the filing of a charging document. Dissuasion could be shown through evidence that the defendant attempted to dissuade a victim or witness from *either* causing a charging document to be sought and prosecuted, *or* solely based on assisting in the prosecution of an already-filed charging document.

---

[4] For brevity and convenience, we refer to (1) the clause that begins with "[c]ausing a complaint" as the "causing clause," (2) the clause that begins with "assisting in the prosecution" as the "assisting clause," and (3) the word "and" that appears between the causing and assisting clauses as "the connecting 'and.' "

For reasons discussed below, section 136.1(b)(2) is reasonably susceptible to both proffered interpretations and, thus, is ambiguous. (See *People v. Ruiz* (2018) 4 Cal.5th 1100, 1106 [a statute is ambiguous if its " 'language supports more than one reasonable construction' "].)

On its face, section 136.1(b)(2) is reasonably susceptible to the conjunctive reading, which rests largely on the presence of the connecting "and." "The ordinary and usual usage of 'and' is as a conjunctive, meaning ' "an additional thing," ' 'also' or 'plus.' " (*In re C.H.*, *supra*, 53 Cal.4th at p. 101; see *Dr. Leevil, LLC v. Westlake Health Care Center* (2018) 6 Cal.5th 474, 479 ["the use of the conjunctive word 'and' to connect the three conditions can only mean that all three conditions must be satisfied"].) By contrast, " '[U]se of the word "or" in a statute indicates an intention to use it disjunctively so as to designate alternative or separate categories.' " (*People ex rel. Green v. Grewal* (2015) 61 Cal.4th 544, 561.) Thus, according to the Court of Appeal and defendant, had the Legislature intended for the connecting "and" to be read disjunctively, the Legislature would instead have used the word "or." (See *Reynoza*, *supra*, 75 Cal.App.5th at p. 188 [stating that a disjunctive reading "pass[es] over the drafters' use of the conjunctive ['and'] rather than the disjunctive ['or']"].) As defendant observes, this argument is bolstered by the Legislature's use of the word "or" in other parts of section 136.1 that were clearly intended to be read disjunctively. Specifically, section 136.1, subdivision (b)(1) and (3) exclusively use "or" to convey a disjunctive meaning and section 136.1(b)(2) uses "or" earlier in its first clause to convey a disjunctive meaning when listing the different charging documents. With this context, the Legislature's use of "and" twice in section 136.1(b)(2) stands out, thus suggesting the

Legislature understood the difference between the typically conjunctive "and" and the typically disjunctive "or." Overall, the Legislature's use of the connecting "and" more firmly supports the conjunctive construction of section 136.1(b)(2).

"But the word *and* is not always to be taken conjunctively. It is sometimes, in a fair and rational construction of a statute, to be read as if it were *or*, and taken disjunctively . . . ." (*Pool*, *supra*, 27 Cal. at p. 581; see *People v. Bigelow* (1984) 37 Cal.3d 731, 755 ["the word 'and' is often carelessly used when 'or' is intended"]; 1A Singer & Singer, Statutes and Statutory Construction (7th ed. 2022) § 21:14 ["There has been . . . such laxity in the use of these terms ['and' and 'or'] that courts have generally said the words are interchangeable and that one may be substituted for the other, if consistent with legislative intent"].) Nevertheless, while "[i]t is true that courts will sometimes substitute 'or' for 'and,' and vice versa, when necessary to accomplish the evident intent of the statute, . . . doing so is an exceptional rule of construction." (*In re C.H., supra*, 53 Cal.4th at pp. 102–103.) For example, we might do so to correct a "drafting error" where "it appears clear that a word has been erroneously used, and a judicial correction will best carry out the intent of the adopting body." (*People v. Skinner* (1985) 39 Cal.3d 765, 775.) The Attorney General argues that another consideration — the canon against surplusage — suggests that this is a circumstance when the word "and" should be given a disjunctive meaning. Under this canon of construction, "we generally must 'accord[] significance, if possible, to every word, phrase and sentence in pursuance of the legislative purpose,' and have warned that '[a] construction making some words surplusage is to be avoided.' " (*People v. Valencia* (2017) 3 Cal.5th 347, 357.)

We agree with the Attorney General that certain aspects of the canon against surplusage support the disjunctive construction of section 136.1(b)(2). The Attorney General reasons that dissuasion done to prevent a witness from causing a charging document "to be sought" also is an attempt to prevent the witness from "assisting in the prosecution thereof." (§ 136.1(b)(2).) In other words, causing a complaint to be sought is one form of assisting in the prosecution of a complaint — such that dissuasion from doing the former will also always constitute dissuasion from doing the latter — and thus will constitute a violation of section 136.1(b)(2). In this context, the Attorney General posits that the conjunctive reading overlooks the other ways in which a victim or witness can assist in the prosecution of a case after it has been filed, and would potentially immunize attempts to dissuade such conduct if the defendant had not also attempted to dissuade the victim or witness from causing the case to be sought and prosecuted in the first place. This approach would effectively render the assisting clause surplusage.[5]

The Attorney General also reasons that if we were to accept defendant's characterization of the causing and assisting clauses as stating separate elements of a unified offense, we could "avoid superfluity" under a conjunctive reading only by "requir[ing] two acts of dissuasion at different times: the defendant would first have to unsuccessfully attempt to

---

[5]  This approach does not require us to view the assisting clause as some broad "catch-all" that covers all postcharging dissuasion. Indeed, doing so would create surplusage problems of its own. As we explain further below (see pt. II.C., *post*), while we conclude the assisting clause must be narrowly construed, we have no occasion here to define its particular contours.

dissuade the witness from causing a complaint to be sought and prosecuted, and then would have to attempt to dissuade that witness from assisting in the prosecution of the filed complaint. That is, section 136.1(b)(2) could be violated only when the first dissuasion attempt was unsuccessful."

The Attorney General argues that the Legislature did not intend to establish an offense that effectively requires separate acts at separate times — the first of which must have been unsuccessful — to constitute a violation. First, as the Attorney General observes, construing section 136.1(b)(2) this way would ignore the Legislature's clarification that attempts at dissuasion are prohibited just the same as accomplished dissuasion. (See § 136.1, subd. (d).)[6]

Second, the Attorney General contends that this construction ignores the context of the statutory scheme of which section 136.1(b)(2) is a part by adopting a construction that would require us to conclude that the Legislature intended for section 136.1(b)(2) to operate in a significantly different manner than analogous subdivisions and statutes. The Attorney General argues that it would be anomalous for us to conclude that the Legislature intended for section 136.1(b)(2) to require the commission of separate acts at separate stages of a potential criminal prosecution — before and during a prosecution — while enacting at the same time analogous subdivisions that require the commission of only a single act at

---

[6]      Section 136.1, subdivision (d) provides: "Every person attempting the commission of any act described in subdivisions (a), (b), and (c) is guilty of the offense attempted without regard to success or failure of the attempt. The fact that no person was injured physically, or in fact intimidated, shall be no defense against any prosecution under this section."

a single stage of a potential criminal prosecution. For example, similar to the precharging stage of a case addressed by the causing clause, subdivision (b)(1) of section 136.1 prohibits attempting to dissuade a person from "[m]aking any report of . . . victimization to a[] . . . prosecuting agency."[7] No additional conduct is required at another time. Similarly, somewhat analogously to the ongoing stages of a prosecution that appear to be addressed by the assisting clause, section 136.1, subdivision (a)(1) prohibits dissuading a person from "attending or giving testimony at any trial,"[8] and section 137, subdivision (c) prohibits "induc[ing] . . . false testimony."[9] Neither provision requires further conduct at another stage of the criminal proceeding. It seems questionable that the Legislature intended for only section 136.1(b)(2) to

---

[7] More fully, section 136.1, subdivision (b)(1) prohibits attempting to dissuade a victim or witness from "[m]aking any report of that victimization to any peace officer or state or local law enforcement officer or probation or parole or correctional officer or prosecuting agency or to any judge."

[8] Section 136.1, subdivision (a)(1) provides in full: "Except as provided in subdivision (c), any person who does any of the following is guilty of a public offense and shall be punished by imprisonment in a county jail for not more than one year or in the state prison: [¶] (1) Knowingly and maliciously prevents or dissuades any witness or victim from attending or giving testimony at any trial, proceeding, or inquiry authorized by law."

[9] Section 137, subdivision (c) provides in full: "Every person who knowingly induces another person to give false testimony or withhold true testimony not privileged by law or to give false material information pertaining to a crime to, or to withhold true material information pertaining to a crime from, a law enforcement official is guilty of a misdemeanor."

require two different acts of misconduct at different stages of a criminal proceeding.

The two exceptions to the conjunctive reading of section 136.1(b)(2) articulated by the Court of Appeal — that the defendant was unaware that a charging document had been filed, or attempted to dissuade the filing of an amended charging document (*Reynoza, supra*, 75 Cal.App.5th at p. 189) — do not fully solve the conjunctive construction's surplusage problem. This is because both exceptions pertain to the causing clause — they have little bearing on the assisting clause, which remains effectively read out of the statute under the conjunctive reading.

However, " 'the canon against surplusage is [merely] a guide to statutory interpretation and is not invariably controlling.' " (*Skidgel v. California Unemployment Ins. Appeals Bd.* (2021) 12 Cal.5th 1, 21.) Indeed, the Attorney General's proposed interpretation also raises serious questions. The word "prosecute" appears in close proximity in both the causing clause and the assisting clause — "[c]ausing a complaint . . . to be sought and *prosecuted*, and assisting in the *prosecution* thereof." (§ 136.1(b)(2), italics added.) We understand the term "[c]ausing a complaint . . . to be sought and prosecuted" (§ 136.1(b)(2)) in the causing clause to refer to the filing of initial charging documents or the initial pursuit of an action. But under the Attorney General's view, the term "assisting in the prosecution thereof" in the assisting clause would refer to postcharging conduct that includes the continuation of legal action on charges that have already been filed. Under this view, the word

"prosecute" would curiously have different meanings, even though the terms are used just a few words apart.[10]

On balance, we conclude the parties each offer equally plausible interpretations of the statute — defendant relying on the ordinarily conjunctive meaning of "and," and the Attorney General relying on the canon against surplusage. While the parties offer additional textual arguments in support of their respective proffered interpretations, none of them disturbs the relative equipoise in which the parties' primary arguments stand.

For his part, defendant argues his proposed conjunctive reading is further supported by the presence of the word "thereof" at the end of the assisting clause — "assisting in the prosecution *thereof*" (§ 136.1(b)(2), italics added) — which he posits "refers back to the complaint . . . which is to be sought" under the causing clause. Even assuming that is the case, however, the reference does no more than indicate that the assisting clause relates to the prosecution of the same list of charging documents and violations identified in the causing clause — namely, "a complaint, indictment, information, probation or parole violation." (§ 136.1(b)(2).) Using the word "thereof" as shorthand simply spared the Legislature from repeating the same list at the end of the assisting clause. Moreover, even if the Legislature intended the word "thereof" to be a term of specific reference that suggests that the assisting clause refers not just to *any* complaint, but specifically to the

---

[10]    Yet we also note the causing clause itself plainly lists two acts — "sought and prosecuted" — thus adding to any uncertainty about whether the Legislature meant dissuasion under section 136.1(b)(2) to require multiple acts.

complaint referred to in the first clause — that is, the one sought by the victim or witness — this would still suggest only that the causing and assisting clauses are tied together *in some way*; the relationship does not necessarily compel a conjunctive reading.

Meanwhile, the Attorney General relies on the interpretive principle that "[t]he wording of the lead-in" to a statute "may be crucial to the meaning" of the word "and." (Scalia & Garner, Reading Law: The Interpretation of Legal Texts (2012) p. 122 (hereinafter Scalia & Garner).) For example, "If the introductory phrase is *any one or more of the following*, then the satisfaction of any one element . . . will suffice." (*Ibid.*) That is, the word "and" may be read disjunctively as the word "or" where, as the Attorney General emphasizes here, the relevant introductory language of the dissuasion statute prohibits a defendant from engaging in "*any of the following*" acts, including those specified in the causing clause and the assisting clause. (§ 136.1, subd. (b), italics added.)

Focusing on this aspect of section 136.1(b)(2)'s text and statutory context, the Attorney General observes that subdivision (b)(2) is bookended by the word "any," which he maintains supports a disjunctive reading of the connecting "and." The first significant "any" appears in the introductory paragraph of subdivision (b), which makes it a crime to "do[] *any* of the following." (§ 136.1, subd. (b), italics added; see Scalia & Garner, *supra*, at p. 122 ["If the introductory phrase is *any one or more of the following*, then the satisfaction of any one element . . . will suffice"].) The Attorney General notes this introductory phrase is then followed by "a variety of present participles that introduce a gerund phrase: '(1) *Making* any report of that victimization . . . . [¶] (2) *Causing* a complaint, indictment, information, probation or parole violation to be

sought and prosecuted, and *assisting* in the prosecution thereof. [¶] (3) *Arresting* or *causing* or *seeking* the arrest of any person in connection with that victimization.' " Thus, the Attorney General reasons, the phrase "any of the following" in the introductory paragraph of subdivision (b) criminalizes any type of conduct described in each of the gerund phrases found in subdivision (b)'s subparts — "[m]aking any report" (§ 136.1, subd. (b)(1)), "[c]ausing a complaint . . . to be sought and prosecuted" (§ 136.1(b)(2)), "assisting in the prosecution thereof" (*ibid.*), and "arresting . . . any person" (*id.*, subd. (b)(3)).

The second "any" cited by the Attorney General appears in subdivision (d) of section 136.1, which provides that "[e]very person attempting the commission of *any* act described in subdivisions (a), (b), and (c) is guilty of the offense attempted without regard to success or failure of the attempt." (Italics added.)[11] The acts described in subdivision (b) include each of the gerund phrases found in that subdivision. Thus, for section 136.1(b)(2), it includes "[c]ausing a complaint . . . to be sought and prosecuted" as well as "assisting in the prosecution thereof." The Attorney General maintains that the combination of the Legislature's use of the word "any" together with the gerund phrases in subdivision (b) of section 136.1 suggests that the Legislature may have intended the connecting "and" to be read disjunctively when viewed in connection with the gerund assisting clause. (See Scalia & Garner, *supra*, at p. 122.)

---

[11] The word "any" also appears in section 136.1, subdivision (c), which increases the penalty when the commission of "any of the acts described in subdivision (a) or (b)" is accompanied by certain aggravating factors.

16

The Attorney General's reading is plausible. But an equally — if not more — plausible alternative reading is that the word "any," as it appears in subdivision (b) of section 136.1, refers to each enumerated part of subdivision (b) *as a whole* and not to each part's constituent elements. Specifically, subdivision (b) prohibits a person from doing "any of the following" and then lists three enumerated subparts. "[A]ny of the following" can simply be in reference to each of the three subparts that follow, as opposed to a suggestion that the three subparts should be broken down further into their constituent elements.

Because we conclude from the text and statutory context of section 136.1(b)(2) that the statute is equally susceptible to the parties' competing constructions, we turn to other interpretive aids.

**B. The Legislative History of Section 136.1(b)(2) and Other Jurisdictions' Experiences Implementing Similar Statutory Language Do Not Resolve the Statute's Ambiguity**

The legislative history of section 136.1(b)(2) and other jurisdictions' experiences implementing similar statutory language are likewise inconclusive on the question of whether to read the statute conjunctively or disjunctively. (See *City of San Jose*, *supra*, 2 Cal.5th at pp. 616–617 [" ' "If the statutory language permits more than one reasonable interpretation, courts may consider other aids, such as the statute's purpose, legislative history, and public policy" ' "].)

1. *Legislative History of Section 136.1(b)(2)*

a. *Prior law*

Before the Legislature enacted section 136.1, witness dissuasion was prohibited by former section 136. (See *People v.*

*Newton* (1963) 222 Cal.App.2d 187, 189; former § 136.) As originally enacted in 1872, former section 136 prohibited "willfully prevent[ing] or dissuad[ing] . . . a witness . . . from attending upon any trial." (Former § 136; see *Newton,* at p. 190.)

By 1979, the Legislature had amended former section 136 by subdividing it into misdemeanor and felony offenses for nonforcible and forcible witness dissuasion, respectively. (Stats. 1979, ch. 944, § 1, p. 3252; see *Babalola v. Superior Court* (2011) 192 Cal.App.4th 948, 956, fn. 6 (*Babalola*).) Thus, former section 136, subdivision (a) made it a misdemeanor to "willfully and unlawfully prevent[] or dissuade[] . . . a witness . . . from attending upon any trial." (Stats. 1979, ch. 944, § 1, p. 3252.) And former section 136, subdivision (b) made it a felony to do so "by means of force or threats of unlawful injury to person or damage to the property of another." (Stats. 1979, ch. 944, § 1, p. 3252.)

b. *The ABA model statute*

In 1979, an American Bar Association (ABA) committee issued a report that found "[e]xisting state statutes . . . largely inadequate to deal with intimidation." (ABA Section of Criminal Justice, Committee on Victims, Reducing Victim/Witness Intimidation: A Package (1979) p. 1 (hereinafter ABA Report); see *Babalola, supra,* 192 Cal.App.4th at p. 956.) The ABA Report contained a model statute intended "to broaden substantially the coverage of many state laws." (ABA Rep. at p. 8; see *Babalola,* at p. 956.) One area identified for potential broadening was protection against dissuasion for victims who were not also witnesses. (ABA Rep. at p. 8 ["The addition of language proscribing the act of threatening someone not to

18

report their victimization is an important advance, and is not clearly covered by existing statutes"].) The ABA's "House of Delegates approved the recommendations in the report in August 1980." (*Babalola*, at p. 956, fn. 5.)

Section 1 of the ABA model statute provided definitions for various statutory terms. (ABA Rep., *supra*, at pp. 6–7.)

Section 2 of the model statute — which would serve as the basis for Penal Code section 136.1, subdivisions (a) and (b) — established a misdemeanor offense for "knowingly and maliciously prevent[ing] or dissuad[ing] or attempt[ing] to so prevent or dissuade any witness or victim from attending or giving testimony at any trial . . . or . . . attempt[ing] to prevent or dissuade another person who has been the victim of a crime or who is a witness to a crime or a person acting on behalf of the victim of a crime from (a) making any report of such victimization to any peace officer or state or local or federal law enforcement officer or probation or parole or correctional officer or prosecuting agency or to any judge; (b) *causing a complaint, indictment, information, probation or parole violation to be sought and prosecuted and assisting in the prosecution thereof*; (c) arresting or causing or seeking the arrest of any person in connection with such victimization . . . ." (ABA Rep., *supra*, at pp. 7–8, italics added.)

Section 3 of the model statute made the conduct described in section 2 a felony if the conduct was accompanied by certain aggravating factors. (ABA Rep., *supra*, at pp. 8–9.) Section 4 addressed attempted dissuasion. (*Id*. at p. 9.) Sections 5 and 6 addressed protective orders. (*Id*. at pp. 9–11.) And Section 7 addressed pretrial release. (*Id*. at p. 12.)

c. *The Legislature adopts the ABA model statute*

In 1980, Assembly Bill No. 2909 (1979–1980 Reg. Sess.) (Assembly Bill No. 2909) was introduced in the Legislature "to pattern the California witness intimidation statute" after the ABA model statute. (Assem. Com. on Crim. Justice, Analysis of Assem. Bill No. 2909 (1979–1980 Reg. Sess.) as introduced Mar. 6, 1980, p. 2; see Sen. Com. on Judiciary, Analysis of Assem. Bill No. 2909 (1979–1980 Reg. Sess.) as amended Apr. 9, 1980, pp. 1–2 [Assem. Bill No. 2909 "would enact a new intimidation of witnesses and victims law patterned after the Model Statute drafted by the ABA Section on Criminal Justice"]; *People v. Wahidi* (2013) 222 Cal.App.4th 802, 807–808 (*Wahidi*); *Babalola, supra*, 192 Cal.App.4th at p. 956.) The ABA Report was referenced in Assembly and Senate committee analyses, and relevant portions were attached to an Assembly analysis. (Sen. Com. on Judiciary, Analysis of Assem. Bill No. 2909, *supra*, at pp. 1–2; Assem. Com. on Crim. Justice, Analysis of Assem. Bill No. 2909, *supra*, at pp. 2, 5–10.) As with the ABA Report, the Legislature observed that existing California law made no provision "for the intimidation of victims unless they are also witnesses or potential witnesses." (Assem. Off. of Research, 3d reading analysis of Assem. Bill No. 2909 (1979–1980 Reg. Sess.) as amended Apr. 16, 1980, p. 1.)

As initially introduced, Assembly Bill No. 2909 proposed to repeal former section 136 and replace it with a new section 136 implementing sections 1 through 4 of the ABA model statute nearly verbatim. (Compare Assem. Bill No. 2909, *supra*, as introduced Mar. 6, 1980, with ABA Rep., *supra*, at pp. 6–9.) The Legislative Counsel's Digest that prefaced Assembly Bill No. 2909 when introduced characterized the portion of the bill that would eventually become section 136.1, subdivision (b) as

prohibiting the dissuasion of a victim or witness "from performing specified acts relating to assisting law enforcement or prosecution activities."**12** (Legis. Counsel's Dig., Assem. Bill No. 2909 (1979–1980 Reg. Sess.) as introduced Mar. 6, 1980, p. 1.)

After the Assembly passed Assembly Bill No. 2909, the Senate Committee on the Judiciary observed in its analysis of the bill — under the heading "<u>Redrafting necessary</u>" — that because the bill was based on the ABA's "<u>draft</u> model intimidation statute[,] . . . it has numerous rough edges and the quality of language is far worse than that produced by our Legislative Counsel. [¶] The syntax is cumbersome and the sentences extremely lengthy." (Sen. Com. on Judiciary, Analysis of Assem. Bill No. 2909, *supra*, as amended Apr. 9, 1980, p. 5.) As an example, the committee analysis cited the fact that Assembly Bill No. 2909's implementation of section 2 of the model statute "contains a single sentence of 17 lines and 150 words." (Sen. Com. on Judiciary, at p. 5.) The analysis suggested, "At some point the bill should be cleaned-up and rewritten in order to smooth out such rough spots." (*Id.* at p. 6.)

The Senate amended Assembly Bill No. 2909 by, among other things, keeping the definitions (section 1 of the model

---

**12** " 'The Legislative Counsel's Digest is printed as a preface to every bill considered by the Legislature.' [Citation.] The Legislative Counsel's summaries 'are prepared to assist the Legislature in its consideration of pending legislation.' [Citation.] Although the Legislative Counsel's summaries are not binding [citation], they are entitled to great weight. [Citation.] 'It is reasonable to presume that the Legislature [acted] with the intent and meaning expressed in the Legislative Counsel's digest.' " (*Jones v. Lodge at Torrey Pines Partnership* (2008) 42 Cal.4th 1158, 1169–1170.)

statute) in section 136, and moving the misdemeanor, felony, and attempt provisions (sections 2, 3, and 4 of the model statute, respectively) to a new section 136.1. (Sen. Amend. to Assem. Bill No. 2909 (1979–1980 Reg. Sess.) June 18, 1980; Sen. Amend. to Assem. Bill No. 2909 (1979–1980 Reg. Sess.) July 1, 1980.) During this process, and without explanation, the Senate also inserted a comma immediately before the connecting "and." (Sen. Amend. to Assem. Bill No. 2909, *supra*, June 18, 1980.)

Assembly Bill No. 2909 was enacted as so amended. (Stats. 1980, ch. 686, § 2.1, p. 2076.) The Legislative Counsel's Digests that prefaced each iteration of the bill as it progressed through the Legislature consistently characterized section 136.1, subdivision (b) as prohibiting the dissuasion of a victim or witness "from performing specified acts relating to assisting law enforcement or prosecution activities." (Legis. Counsel's Dig., Assem. Bill No. 2909, *supra*, as introduced Mar. 6, 1980, p. 1; Legis. Counsel's Dig., Assem. Bill No. 2909 (1979–1980 Reg. Sess.), as amended Apr. 16, 1980, pp. 1–2 [same]; Legis. Counsel's Dig., Assem. Bill No. 2909 (1979–1980 Reg. Sess.), as amended June 18, 1980, pp. 1–2 [same]; Legis. Counsel's Dig., Assem. Bill No. 2909 (1979–1980 Reg. Sess.), as amended July 1, 1980, pp. 1–2 [same]; Legis. Counsel's Dig., Assem. Bill No. 2909 (1979–1980 Reg. Sess.), 2 Stats. 1980, Summary Dig., p. 188 [same].)[13]

---

[13] An early analysis in each house of the Legislature initially characterized Assembly Bill No. 2909 as prohibiting dissuasion from "[c]ausing an accusatory pleading to be filed." (Assem. Com. on Crim. Justice, Analysis of Assem. Bill No. 2909, *supra*, as introduced Mar. 6, 1980, p. 1; see Sen. Com. on Judiciary, Analysis of Assem. Bill No. 2909, *supra*, as amended Apr. 9,

As enacted, section 136.1(b)(2) read: "Except as provided in subdivision (c), every person who attempts to prevent or dissuade another person who has been the victim of a crime or who is witness to a crime from doing any of the following is guilty of a misdemeanor: [¶] . . . [¶] (2) Causing a complaint, indictment, information, probation or parole violation to be sought and prosecuted, and assisting in the prosecution thereof." (Stats. 1980, ch. 686, § 2.1, p. 2076.)[14]

### 2. *Other Jurisdictions' Implementations of the ABA Model Statute*

At least eight other jurisdictions have enacted witness dissuasion statutes premised on the ABA model statute.

Delaware's version makes it a felony to dissuade a victim or witness from "[c]ausing a complaint, indictment, information, probation or parole violation to be sought or prosecuted, *or from* assisting in the prosecution thereof." (Del. Code Ann. tit. 11, § 3532(2), italics added; see *State v. Stovall* (Del.Super.Ct., Sept. 30, 1996, No. IN94-06-1461) 1996 Del. Super. Lexis 438,

---

1980, p. 3.) However, a subsequent analysis by the Assembly Office of Research performed in connection with the third reading of the bill in the Assembly characterized it broadly — consistent with the Legislative Counsel's Digests — as prohibiting dissuasion from "[a]ssisting law enforcement or prosecution activities." (Assem. Off. of Research, 3d reading analysis of Assem. Bill No. 2909, *supra*, as amended Apr. 16, 1980, p. 1.) Notably, these analyses were performed before Assembly Bill No. 2909 reached its final form, as amended by the Senate.

[14] "Effective 1998, subdivisions (a) and (b) [of section 136.1] were revised from straight misdemeanor status to provide for alternative felony-misdemeanor punishment," referred to as a " 'wobbler.' " (*People v. McElroy* (2005) 126 Cal.App.4th 874, 880; Stats. 1997, ch. 500, § 1, pp. 3123–3124.)

p. *8, fn. 8 [stating the law "is modeled after" the ABA model statute, with differences that are, "for the most part, . . . inconsequential"].)

Florida's statute makes it a crime to dissuade a person from "[c]ausing a criminal prosecution, or a parole or probation revocation proceeding, to be sought or instituted, *or from* assisting in such prosecution or proceeding." (Fla. Stat. Ann. § 914.22(3)(d), italics added.)

Georgia's statute makes it a crime to dissuade a person from "[c]ausing a criminal prosecution, or a parole or probation revocation proceeding, to be sought or instituted, *or* assisting in such prosecution or proceeding." (Ga. Code Ann. § 16-10-32(b)(4), italics added.)

Kansas's statute makes it a crime to dissuade a victim, witness, or person acting on a witness's behalf from "causing a complaint, indictment or information to be sought and prosecuted or causing a violation of probation, parole or assignment to a community correctional services program to be reported and prosecuted, and assisting in its prosecution." (Kan. Stat. Ann. § 21-5909(a)(2)(B); *State v. Doyle* (Kan.Ct.App. July 12, 2019, No. 119,174) 2019 WL 3047432, p. *6 [noting Kansas's statute "stems from" the ABA model statute].)

Missouri's statute makes it a crime to dissuade a victim or a person acting on the victim's behalf from "[c]ausing a complaint, indictment or information to be sought and prosecuted *or* assisting in the prosecution thereof." (Mo. Ann. Stat. § 575.270(1)(2)(b), italics added.)

As originally enacted in 1981, Wisconsin's statute made it a misdemeanor to dissuade a victim from "[c]ausing a complaint, indictment or information to be sought and prosecuted and

assisting in the prosecution thereof." (Wis. Stat. Ann. former § 940.44(2); see *State v. Freer* (Wis.Ct.App. 2009) 779 N.W.2d 12, 14 (*Freer*).) As we explain further below, after a Wisconsin appellate court found this provision ambiguous and construed the connecting "and" disjunctively (*Freer*, at pp. 17, 18), Wisconsin's Legislature amended the statute to conform to the court's interpretation. (Wis. Stat. Ann. § 940.44(2).) It now prohibits dissuading a victim from "[c]ausing a complaint, indictment, or information to be sought or prosecuted, *or* assisting in the prosecution thereof." (*Ibid.*, italics added.)

The District of Columbia's statute makes it a crime to dissuade a person from "[c]ausing a criminal prosecution or a parole or probation revocation proceeding to be sought or instituted, *or* assisting in a prosecution or other official proceeding." (D.C. Code Ann. § 22-722(a)(3)(D), italics added.)

And federal law makes it a crime to dissuade a person from "causing a criminal prosecution, or a parole or probation revocation proceeding, to be sought or instituted, *or* assisting in such prosecution or proceeding." (18 U.S.C. § 1512(d)(4), italics added; see Sen.Rep. No. 97-532, 2d sess. (1982), reprinted in 1982 U.S. Code Cong. & Admin. News, p. 2521 ["Section 1512 . . . draws heavily upon a model statute developed by the ABA Victims Committee"].)

Each jurisdiction's statute contains clauses that are substantially similar to section 136.1(b)(2)'s causing and assisting clauses. And each jurisdiction has treated the clauses disjunctively. Six did so legislatively by replacing the ABA model statute's connecting "and" with some formulation

including the word "or."[15]   The other two states' legislatures retained the connecting "and," which their courts have construed disjunctively. (See *Freer*, *supra*, 779 N.W.2d at p. 18; *State v. Shields* (Kan.Ct.App., Feb. 7, 2020, No. 119,844) 2020 Kan.App. Unpub. Lexis 60,  pp. *1, *3, *8 [rejecting, without analysis, a sufficiency of the evidence challenge premised on dissuasive conduct that occurred after charges had been filed].)

In *Freer*, *supra*, 779 N.W.2d 12, the Wisconsin Court of Appeals thoroughly examined the causing and assisting clauses in the relevant portion of a statute premised on the model ABA statute and determined it operated disjunctively, notwithstanding that the statute — like California's — connected the two clauses with the word " 'and.' "  As noted, Wisconsin's Legislature originally adopted the relevant portion of the ABA model statute as-is, retaining the connecting "and" without modification. (Wis. Stat. Ann. former § 940.44(2); see *Freer*, at p. 17.)  After the defendant in *Freer* was charged with disturbing the peace stemming from an altercation with a local performer, the defendant left a voicemail threatening to harm the performer's reputation if the performer insisted on " 'get[ting] into a spitting contest' " and " 'denounc[ing] people in an unjustified way.' " (*Freer*, at p. 13.)  It was "undisputed that this alleged act of intimidation did not occur in time to prevent or dissuade [the victim] from 'causing a complaint to be

---

[15]   Delaware and Florida replaced the connecting "and" with ", or from." (Del. Code Ann. tit. 11, § 3532(2); Fla. Stat. Ann. § 914.22(3)(d).)  Georgia, the United States, and the District of Columbia replaced the connecting "and" with ", or." (Ga. Code Ann. § 16-10-32(b)(4); 18 U.S.C. § 1512(d)(4); D.C. Code Ann. § 22-722(a)(3)(D).)  And Missouri replaced the connecting "and" with "or." (Mo. Ann. Stat. § 575.270(1)(2)(b).)

sought.' " (*Ibid.*, quoting Wis. Stat. Ann. former § 940.449(2).)[16] After a jury found the defendant guilty, he argued on appeal that insufficient evidence supported his conviction because there was no evidence showing that he violated the Wisconsin statute's equivalent of section 136.1(b)(2)'s causing clause. The "heart of [the defendant]'s argument" was that the legislature "connected" the statute's clauses "with the conjunctive 'and,' not the disjunctive 'or.' " (*Freer*, at p. 14.) The Wisconsin Court of Appeals rejected this claim. (*Id.* at pp. 14–19.)

The *Freer* court found the statute ambiguous, reasoning that " 'and' in statutes is not always interpreted as a conjunctive term" (*Freer*, *supra*, 779 N.W.2d at p. 15), and that treating it as such would render the assisting clause surplusage and create gaps in coverage with Wisconsin's other dissuasion laws depending on when in the legal process a person committed an act of dissuasion (*id.* at pp. 16–17). In consulting the statute's legislative history, the court observed that Wisconsin's legislative analyst consistently summarized the relevant portion of the statute as relating to dissuasion from "assisting the prosecution." (*Id.* at p. 17.) The court reasoned from this that "the legislature intended 'causing a complaint . . . to be sought and prosecuted' to be an example of the broader category of . . . 'assisting in the prosecution.' " (*Id.* at p. 18, quoting Wis. Stat. Ann. former § 940.449(2).) By contrast, the court observed that the legislative analyst did "not even mention language . . . about '[c]ausing a complaint . . . to be sought and prosecuted,'

---

[16] The state did not dispute the defendant's contention that the victim had "caused a complaint to be sought against him when [the victim] reported the incident to the police . . . and the police issued a misdemeanor citation for disorderly conduct." (*Freer*, *supra*, 779 N.W.2d at p. 14, fn. 2.)

much less state that the purpose of this language is to limit the reach of the statute to acts of intimidation occurring before a complaint is sought." (*Freer*, at p. 18.) Accordingly, the *Freer* court read the connecting " 'and' " in the Wisconsin statute "in the disjunctive," thus concluding the statute did not require that a defendant dissuade a person from both causing a complaint to be sought and prosecuted and assisting in that prosecution. (*Ibid.*)

The Wisconsin Legislature later amended Wisconsin's counterpart to section 136.1(b)(2) to replace the connecting "and" with "or" so it would "comply with the interpretation set forth in the *Freer* case." (2015 Wis. Assem. Bill No. 5, 2015 Wis. Sess. Laws 14; see Wis. Stat. Ann. § 940.44(2).)

3. *Analysis*

As with the statutory text and context of section 136.1(b)(2), we conclude that the legislative history and other jurisdictions' experiences implementing the same or substantially similar provisions are likewise inconclusive as to whether to read section 136.1(b)(2) conjunctively or disjunctively.

The Legislature expressly modeled section 136.1(b)(2) after the ABA model statute. It referenced the ABA Report in legislative committee analyses, and attached pages from the report to the analyses. The ABA Report stated that the model statute was intended "to broaden substantially the coverage of many state laws" regarding witness dissuasion. (ABA Rep. at p. 8; see *Babalola, supra*, 192 Cal.App.4th at p. 956.) We find it reasonable to infer from the references to, and presence of, the ABA Report within the committee materials that the Legislature was aware of — and joined in — the stated intent to

substantially broaden the coverage of California's witness dissuasion laws. Indeed, the Senate Committee on the Judiciary analysis explained that the bill "adapts in large part the provisions of the draft proposal [i.e., the ABA model statute]" (Sen. Com. on Judiciary, Analysis of Assem. Bill No. 2909, *supra*, as amended Apr. 9, 1980, p. 2) and that "[t]he purpose of the bill is to expand the coverage of the law prohibiting the intimidation of witnesses" (*ibid.*; see *Wahidi*, *supra*, 222 Cal.App.4th at p. 808 [courts may consider committee materials when determining legislative intent]).

However, even a conjunctive (and thus, narrower) reading of section 136.1(b)(2) would still provide broader coverage than that afforded by former section 136 as it existed when the Legislature replaced it with section 136.1.[17] And both the ABA Report and Assembly committee materials specifically identify the need to broaden the coverage of existing laws to protect against dissuasion of victims who are not also witnesses. (ABA Rep. at p. 8; Assem. Off. of Research, 3d reading analysis of Assem. Bill No. 2909, *supra*, as amended Apr. 16, 1980, p. 1.) Thus, the stated legislative intent to substantially broaden the prohibition on dissuasion supports resolving statutory ambiguities in favor of a broader reading — the disjunctive one that prohibits more, rather than less, dissuasive conduct. Yet, this intent is also consistent with a narrower, conjunctive construction because such a construction would also

---

[17]    When the Legislature replaced former section 136 with section 136.1, former section 136 then addressed only dissuasion from attending trial (Stats. 1979, ch. 944, § 1, p. 3252; *Babalola*, *supra*, 192 Cal.App.4th at p. 956, fn. 6), which is now addressed by section 136.1, subdivision (a).

substantially broaden protections against dissuasion as compared to prior law.

The Legislative Counsel's Digests to Assembly Bill No. 2909 are similarly unenlightening. As noted, they consistently characterized the relevant portions of the bill broadly as prohibiting dissuading a victim or witness "from performing specified acts relating to assisting law enforcement or prosecution activities." (*Ante,* pp. 21–22.) While the reference to "assisting . . . prosecution activities" is broad enough to encompass "assisting in the prosecution" of a charging document (§ 136.1(b)(2)), we interpret the preceding phrase "performing specified acts" as a reference to the acts specified in section 136.1(b)(2). In other words, the digests simply refer to the ambiguous statutory language we are construing here. Moreover, two early legislative committee analyses characterized an earlier version of the bill as prohibiting dissuasion from "[c]ausing an accusatory pleading to be filed, or parole or probation violation sought" (Assem. Com. on Crim. Justice, Analysis of Assem. Bill No. 2909, *supra,* as introduced Mar. 6, 1980, p. 1; Sen. Com. on Judiciary, Analysis of Assem. Bill No. 2909, *supra,* as amended Apr. 9, 1980, p. 3), which tends to suggest that the Legislature was focusing on the causing clause, which could be seen as consistent with a conjunctive reading that gives effect to both clauses. (See *ante*, fn. 13.) Yet, a subsequent Assembly committee analysis adopted the broader reading reflected in the Legislative Counsel's Digests, and nothing in the earlier materials suggests their characterizations of the statutory language were intended "to limit the reach of the statute to acts of intimidation occurring before a complaint is sought." (*Freer*, *supra*, 779 N.W.2d at p. 18.)

Nor can the Legislature's silent insertion of the comma immediately before the connecting "and" reasonably be deemed dispositive. (See *Roland v. Superior Court* (2004) 124 Cal.App.4th 154, 163 ["While not of controlling importance, punctuation is part of a statute and should be considered in its interpretation in attempting to give the statute the construction intended by the drafter"]; *Renee J. v. Superior Court* (2001) 26 Cal.4th 735, 747 (*Renee J.*) ["We agree generally that the presence or absence of commas is a factor to be considered in interpreting a statute"].) As noted, this was the only change the Legislature made to the text of the causing or assisting clauses when implementing the ABA model statute. A comma is "normally used to divide and isolate ideas" (*In re S.C.* (2009) 179 Cal.App.4th 1436, 1441), thereby supporting a disjunctive reading. Indeed, while it is unclear from the statutory text in isolation what the Legislature was intending to divide and isolate, when viewed against the backdrop of the stated legislative intent to substantially broaden the coverage of witness dissuasion laws, and in light of the Legislative Counsel's broad characterization of the provision as prohibiting dissuasion from assisting in prosecution activities, we find it at least plausible that the Legislature intended for the comma to signify that the two clauses independently prohibit separate conduct.

This interpretation is both supported and undermined by the experiences, discussed above, of other jurisdictions implementing the ABA model statute. On the one hand, six of the eight jurisdictions implemented the model statute by replacing the connecting "and" with some formulation involving the word "or," thereby expressly indicating that the causing and assisting clauses are to be viewed disjunctively in those jurisdictions. This near-universal disjunctive treatment of the

clauses by other states' legislatures suggests that our Legislature might also have intended for its insertion of a comma immediately before the connecting "and" to likewise convey that the clauses are to be viewed disjunctively. That is, the fact that our Legislature inserted a *punctuation mark* that signifies divided or isolated ideas (see *In re S.C.*, *supra*, 179 Cal.App.4th at p. 1441) precisely where other legislatures inserted a *word* that signifies independent operation, could suggest that our Legislature intended the comma to communicate the same disjunctive meaning communicated by the word "or."

But on the other hand, our Legislature's decision to not do just as other jurisdictions have done, and simply replace "and" with "or" instead of silently inserting a comma, may well suggest that the Legislature had chosen to *not* give the clause a disjunctive meaning. And it is possible that the Legislature intended the comma to serve some other unspecified purpose.

In the end, while the Legislature's insertion of the comma "is a factor to be considered in interpreting" section 136.1(b)(2) (*Renee J.*, *supra*, 26 Cal.4th at p. 747), we decline to accord it dispositive weight, particularly given the opposing and conflicting meanings the Legislature could have ascribed to its unexplained insertion of a comma during the drafting process.

Turning to the *Freer* court's adoption of the disjunctive interpretation of Wisconsin's implementation of the ABA model statute — which, like section 136.1(b)(2), retained the model statute's connecting "and" — we find that the decision cuts both ways on the question of whether to read section 136.1(b)(2) conjunctively or disjunctively. (See *San Jose Crane & Rigging, Inc. v. Lexington Ins. Co.* (1991) 227 Cal.App.3d 1314, 1321 ["It

is well settled that decisions of sister state courts are particularly persuasive when those decisions construe similar statutes or a uniform act"]; see *Peralta Community College Dist. v. Fair Employment & Housing Com.* (1990) 52 Cal.3d 40, 59 ["we find persuasive the reasoning of the numerous courts in our sister states with statutes similar to ours"].)

In support of the disjunctive construction, the *Freer* court noted that under Wisconsin law, " 'and' in statutes is not always interpreted as a conjunctive term." (*Freer*, *supra*, 779 N.W.2d at p. 15.) The same is true in California. (See *Pool*, *supra*, 27 Cal. at p. 581.) The *Freer* court also found that, as the Attorney General argues here, the doctrine against surplusage supports reading the connecting "and" disjunctively so as not to read the assisting clause out of the statute. (*Freer*, at pp. 16–17.)

But *Freer* is distinguishable in at least one material respect that supports the conjunctive construction. The *Freer* court observed that the Wisconsin legislative analyst generally referred to the statute as addressing dissuading a victim from " 'assisting in the prosecution,' " without "even mention[ing] language in [the statute] about '[c]ausing a complaint . . . to be sought and prosecuted." (*Freer*, *supra*, 779 N.W.2d at p. 18; see *id.* at p. 17 [Wisconsin legislative analyst's "analysis of a bill is printed with and displayed on the bill when it is introduced in the legislature; as such, it is indicative of legislative intent"].) Furthermore, the Wisconsin legislative analyst specifically used an " 'or' " and thereby expressed a disjunctive meaning when referring to " 'assisting in the prosecution' " in a list of witness dissuasion misdemeanors that the bill would create. (*Id.* at p. 17 [" 'A person who maliciously prevents or dissuades . . . a crime victim from making a report, assisting the prosecution *or*

seeking an arrest will be guilty of a Class A misdemeanor'" (italics added)].) The *Freer* court was also clear that this legislative history was key to its decision. (See *id.* at p. 18 ["*In light of the LRB analysis*, we conclude that the legislature intended the victim intimidation statute to prohibit any act of intimidation that seeks to prevent or dissuade a crime victim from assisting in the prosecution" (italics added)].)

In this way, the Wisconsin legislative analyst was singularly focused on the assisting clause, which supports the disjunctive construction, whereas the Legislative Counsel's Digests pertaining to Assembly Bill No. 2909 broadly encompassed both the causing and assisting clauses, which lends at least some support to the conjunctive construction. Arguably, these differing legislative histories in Wisconsin and California — both of which pertain to implementation of the same model statutory language — may reflect the fact that the two states' legislatures were seeking to fill different gaps in their dissuasion statutes.

At bottom, we see nothing in the legislative history of section 136.1(b)(2) or in other jurisdictions' experiences implementing similar statutory language that suggests section 136.1(b)(2) is more susceptible to either the conjunctive construction or the disjunctive construction.

### C. Overlap with Other Dissuasion Statutes Counsels in Favor of a Narrow Construction of the Assisting Clause, but Is Otherwise Inconclusive

As previously observed, the Court of Appeal below also justified its narrow, conjunctive interpretation of section 136.1(b)(2) on the ground that other statutes "prohibit attempts to dissuade victims or witnesses where charges have

already been filed." (*Reynoza, supra,* 75 Cal.App.5th at p. 189, citing §§ 136.1, subd. (a)(1), (2) [prohibiting dissuasion or attempted dissuasion of a victim or witness from giving testimony or attending trial] and 137 [prohibiting attempts to influence testimony or information given to law enforcement].)[18] The Attorney General disagrees. While we agree that a broad, disjunctive interpretation of the assisting clause as a "catch-all" for postcharging dissuasion creates overlap with other statutes, it does not necessarily follow that those concerns warrant a conjunctive construction of section 136.1(b)(2) as a whole.

To begin with, even if a disjunctive reading of section 136.1(b)(2) would result in some slight overlap with other dissuasion statutes, that fact would not be dispositive. Although "[t]he Legislature has taken pains to distinguish the various methods of" dissuasion (*People v. Fernandez* (2003) 106 Cal.App.4th 943, 950 (*Fernandez*)), "[i]t is axiomatic the Legislature may criminalize the same conduct in different ways" (*People v. Superior Court* (*Caswell*) (1988) 46 Cal.3d 381, 395; see § 654 ["An act . . . that is punishable in different ways by different provisions of law may be punished under either of such provisions, but in no case shall the act or omission be punished under more than one provision"]). Indeed, the Legislature contemplated that there may be overlap under certain circumstances of witness dissuasion. (See, e.g., § 140, subd. (b) ["A person who is punished under another provision of law for an act described in subdivision (a) [prohibiting the use of force or threats because the witness, victim, or other person has

---

[18] Defendant also asserts section 137, subdivision (b), may be "an alternate charging option in this case." (Boldface omitted.) We express no opinion on this question.

provided any assistance or information to a law enforcement officer or prosecutor] shall not receive an additional term of imprisonment under this section"].)

We acknowledge there are differences between section 136.1(b)(2) and other dissuasion provisions that suggest the Legislature intended to address a wide spectrum of dissuasive conduct. For example, section 136.1(b)(2) does not contain a malice requirement like section 136.1, subdivision (a)(1) or (2). Nor does section 136.1(b)(2) establish a family member exemption like section 136.1, subdivision (a)(3)[19] or section 137, subdivision (f).[20] And section 136.1(b)(2) is a wobbler, whereas section 137, subdivision (c) is a straight misdemeanor. But section 136.1(b)(2) is not the outlier in these respects — the cited provisions are. None of the other general dissuasion provisions contains a malice requirement, family member exemption, or provides for straight misdemeanor treatment. (See §§ 136.1, subds. (a), (b) [wobblers], 136.1, subd. (c) [felony], 137, subds. (a), (b) [felonies].) The concerns implicated by these differences speak little to whether section 136.1(b)(2) should be read conjunctively or disjunctively, because the potential for overlap still exists under either construction.

In addition, although it is unnecessary for us to decide the issue, there is some question as to whether defendant's conduct

_____

[19]     Section 136.1, subdivision (a)(3) provides: "For purposes of this section, evidence that the defendant was a family member who interceded in an effort to protect the witness or victim shall create a presumption that the act was without malice."

[20]     Section 137, subdivision (f) provides: "The provisions of subdivision (c) shall not apply to an attorney advising a client or to a person advising a member of his or her family."

here falls within the ambit of the statutes cited by the Court of Appeal. The cited statutes relate to attending or testifying at trial (§ 136.1, subd. (a)) and influencing testimony or information provided to law enforcement (§ 137, subds. (b), (c)). But as the Attorney General observes, courts have reached different conclusions about the extent to which a request to "drop the charges" necessarily relates to attendance at a trial or testimony.[21] Defendant maintains that the significance of the phrase "must be examined on a case-by-case basis." On the facts of *this* case, he maintains " 'drop the charges' does not make sense" because "there is no evidence that [Cornejo] planned to separately 'assist in the prosecution.' " We decline to wade into this issue in the first instance because it relates to defendant's challenge to the sufficiency of the evidence supporting the assisting clause, which the Court of Appeal found unnecessary to reach in light of its ruling as to the causing clause. Because we ultimately conclude the Court of Appeal correctly resolved the case on this basis, we need not reach the issue either.

To summarize, although the assisting clause may overlap with other dissuasion provisions, that circumstance does not

---

[21] Among other cases, the Attorney General compares *People v. Cribas* (1991) 231 Cal.App.3d 596, which held that a request that the victim "drop the charges" implies a request not to testify at trial only if the defendant knows "the only way she could drop the charges was by refusing to testify" (*id.* at p. 608) with *Sullivan v. State* (Ga.Ct.App. 2014) 761 S.E.2d 377, which held that the evidence was sufficient to support a conviction for offering a benefit " 'with the intent to deter [the victim] . . . from testifying freely, fully, and truthfully' " where the evidence showed that the defendant encouraged an intermediary "to contact the victim about dropping the charges" (*id.* at p. 383).

provide direct instruction on whether we should read section 136.1(b)(2) conjunctively or disjunctively.

### D. Case Law Discussing Section 136.1 Is Not Particularly Instructive

The Attorney General argues that cases cited by the Court of Appeal and defendant in support of a conjunctive construction of section 136.1(b)(2) are not persuasive "because none addressed the ambiguity in section 136.1(b)(2) or applied the canons of statutory construction to resolve the ambiguity." (See *Reynoza*, *supra*, 75 Cal.App.5th at pp. 187–188, citing *People v. Hallock* (1989) 208 Cal.App.3d 595 (*Hallock*), *Fernandez*, *supra*, 106 Cal.App.4th 943, and *People v. Brown* (2016) 6 Cal.App.5th 1074 (*Brown*).) We agree.

The Court of Appeal in *Fernandez* relied on an earlier court's characterization of section 136.1, subdivision (b) as "punish[ing] a defendant's pre-arrest efforts to prevent a crime from being reported to the authorities." (*Fernandez*, *supra*, 106 Cal.App.4th at p. 950, citing *Hallock*, *supra*, 208 Cal.App.3d at pp. 605–607.) Neither *Fernandez* nor *Hallock* involved section 136.1(b)(2).

The defendant in *Fernandez* attempted to induce his victim to testify falsely at a preliminary hearing — conduct covered by section 137, subdivision (c). (*Fernandez*, *supra*, 106 Cal.App.4th at pp. 945–946.) But he was charged and convicted under section 136.1, subdivision (b)(1), which pertains to dissuading the reporting of a crime. (*Fernandez*, at p. 946.) Thus, although the *Fernandez* court broadly characterized section 136.1, subdivision (b) as addressing pre-arrest conduct, it did so in the context of contrasting "pre-arrest efforts to prevent a crime from being reported to the authorities" under

section 136.1, subdivision (b), with "effort[s] to prevent a witness from giving testimony after a criminal proceeding has been commenced" under section 137, subdivision (c). (*Fernandez*, at p. 950, citing *Hallock*, *supra*, 208 Cal.App.3d at pp. 605–607.) "There was simply no issue before the court concerning section 136.1, subdivision (b)(2)." (*Brown*, *supra*, 6 Cal.App.5th at p. 1083; see *People v. Brooks* (2017) 3 Cal.5th 1, 110 ["It is axiomatic that a case is not authority for an issue that was not considered"].)

In *Hallock*, the defendant threatened his victim, " '[I]f you tell anybody anything that happened . . . I'll blow your house up.' " (*Hallock*, *supra*, 208 Cal.App.3d at p. 598.) The defendant was charged with violating section 136.1, subdivision (c) by means of violating subdivision (b)(1) and (b)(3) — dissuading a victim from reporting a crime or seeking an arrest, respectively. (*Hallock*, at p. 605.) However, the trial court instructed the jury regarding section 136.1, subdivision (a), which prohibits dissuasion from attending or testifying at trial. (*Hallock*, at p. 606.) In comparing subdivisions (a) and (b) of section 136.1, the *Hallock* court described subdivision (b)(2) as prohibiting dissuasion of a victim or witness from "causing a complaint or similar charge to be sought." (*Hallock*, at p. 606.) But the defendant was not charged under section 136.1(b)(2), nor was the jury instructed regarding it. Thus, the *Hallock* court had no occasion to consider the nuances of section 136.1(b)(2); its characterization is therefore dicta.

The Court of Appeal also cited *Brown*, in which the appellate court compared section 136.1(b)(2) to section 137, subdivision (b), but did not examine the ambiguity *within* section 136.1(b)(2). (*Brown*, *supra*, 6 Cal.App.5th at pp. 1080–1082.) The defendant in *Brown* was convicted of violating

section 136.1, subdivision (c) by means of violating section 136.1(b)(2) after he threatened his victim's life unless she agreed to "take back her report to the police." (*Brown*, at pp. 1078, 1079.) No charging document had yet been filed. (*Id.* at p. 1084.) On appeal, the defendant argued he should have been charged, if at all, with violating section 137, subdivision (b), which makes it a felony — but not a serious felony, like section 136.1, subdivision (c) — to induce false testimony by force or threat. (*Brown*, at p. 1080.) The defendant reasoned his conduct was covered by both statutes, which required that he be charged with the more specific of the applicable statutes, which he maintained was section 137. (*Brown*, at pp. 1080–1081.) In assessing this claim, the *Brown* court examined the elements of a section 136.1(b)(2) violation and concluded that, "under section 136.1, subdivision (b)(2), the perpetrator must attempt to prevent a person from causing a charging document to be sought and prosecuted *and* from assisting in the prosecution. Thus, the prevention must occur before the relevant charging document has been filed." (*Brown*, at p. 1082.) In other words, the *Brown* court read section 136.1(b)(2)'s connecting "and" conjunctively. In doing so, however, the *Brown* court simply applied the ordinarily conjunctive meaning of "and" without considering the interpretive aids we have considered here. Nor did the *Brown* court cite or discuss *Velazquez*, *supra*, 201 Cal.App.4th 219, which stated that a violation of section 136.1(b)(2) may be premised on conduct that occurs *after* the relevant charging document has been filed. (*Velazquez*, at pp. 232–233.) Finally, *Brown* is factually distinguishable in that all the dissuasive conduct there occurred before any charging document had been

filed (*Brown*, at p. 1084), thus rendering the court's analysis of section 136.1(b)(2)'s assisting clause dicta.

By the same token, we acknowledge that *Velazquez*, *supra*, 201 Cal.App.4th 219, on which the Attorney General heavily relies, has limited persuasive value. The defendant in *Velazquez* was convicted of violating section 136.1(b)(2) after he told a victim that if she "drop[ped] all the charges" against the defendant's fellow gang members "nothing would happen to her." (*Velazquez*, at p. 224.) In distinguishing the basis on which the *Fernandez* court concluded that "section 136.1, subdivision (b) punishes a defendant's *pre-arrest* efforts to prevent a crime from being reported to the authorities" (*Fernandez*, *supra*, 106 Cal.App.4th at p. 950, italics added), the *Velazquez* court held that "[s]ubdivision (b)(2) clearly encompasses more than prearrest efforts to dissuade, inasmuch as it includes attempts to dissuade a victim from causing a complaint or information to be prosecuted *or assisting in that prosecution*." (*Velazquez*, at p. 233, italics added.) In reaching this conclusion, however, the *Velazquez* court uncritically read section 136.1(b)(2)'s connecting "and" disjunctively, without considering any interpretative aids. Moreover, because the *Velazquez* court concluded the defendant's conviction was supported under the causing clause alone (*Velazquez*, at p. 233), the court had no occasion to consider the interplay between the causing and assisting clauses, thus rendering its observations regarding the same dicta.

Because none of the cases that the Court of Appeal cited actually addresses the ambiguity at issue here, we find they offer little insight to the proper interpretation of section 136.1(b)(2).

41

### E. Defendant's Remaining Arguments Are Unhelpful

Defendant contends several additional considerations support his conjunctive reading of section 136.1(b)(2). We disagree.

First, defendant asserts that the pattern jury instruction corresponding to section 136.1(b)(2) — CALCRIM No. 2622 — supports his reading because it "clearly presents the offense as unified conduct." Specifically, the pattern instruction states that the prosecution must prove that the defendant dissuaded a victim or witness "from cooperating or providing information so that a . . . complaint . . . could be sought and prosecuted, *and from helping to prosecute that action*." (CALCRIM No. 2622, italics added.) "We have cautioned," however, "that 'jury instructions . . . are not themselves the law, and are not authority to establish legal propositions or precedent.' " (*People v. Covarrubias* (2016) 1 Cal.5th 838, 876, fn. 16, quoting *People v. Morales* (2001) 25 Cal.4th 34, 48, fn. 7.) "At most, when they are accurate, . . . they restate the law." (*Morales*, at p. 48, fn. 7.) All that CALCRIM No. 2622 does is restate section 136.1(b)(2) — including the ambiguous connecting "and" at issue here.

Second, defendant asserts that if the Legislature intended the assisting clause "to exist as a separate prohibited act, the drafters would have structured that phrase differently and added it as a stand-alone subsection." Had the Legislature been drafting on a blank slate, we would agree that this would have been a logical way to structure the statute. But that is not what happened here. Instead, the Legislature imported nearly verbatim the ABA model statute. Notably, none of the other jurisdictions that have implemented the ABA model statute (or

substantially similar language) — including those that expressly created separate prohibited acts by replacing the model statute's ambiguous connecting "and" with a clearly disjunctive "or" — set out the causing and assisting clauses in separate subdivisions, as defendant suggests. (See, *ante*, pp. 23–25.)

Additionally, although the Legislature could have structured the statute differently, the format it chose is not illogical. The different parts of section 136.1, subdivision (b) refer generally to different stages of a criminal proceeding: subdivision (b)(1) refers to reporting crimes, subdivision (b)(2) refers to prosecutions, and subdivision (b)(3) refers to arrests. Because the causing and assisting clauses both relate to prosecutions, the Legislature could conclude they logically belong together in the same subpart.

### F. The Rule of Lenity Counsels in Favor of Adopting the Conjunctive Construction

As a final argument, defendant asserts that the ambiguity in section 136.1(b)(2) "triggers the rule of lenity." " 'That rule generally requires that "ambiguity in a criminal statute should be resolved in favor of lenity, giving the defendant the benefit of every reasonable doubt on questions of interpretation. But . . . 'that rule applies "only if two reasonable interpretations of the statute stand in relative equipoise." [Citation.]' [Citations.]" [Citations.]' [Citation.] 'The rule of lenity does not apply every time there are two or more reasonable interpretations of a penal statute. [Citation.] Rather, the rule applies " 'only if the court can do no more than guess what the legislative body intended; there must be an *egregious* ambiguity and uncertainty to justify invoking the rule.' " [Citation.]' " (*People v. Nuckles* (2013) 56 Cal.4th 601, 611; accord, *Smith v. LoanMe, Inc.* (2021)

11 Cal.5th 183, 202; see Scalia & Garner, *supra*, at p. 299 ["The criterion we favor is this: whether, after all the legitimate tools of interpretation have been applied, 'a reasonable doubt persists' "].) " ' "Application of the rule of lenity ensures that criminal statutes will provide fair warning concerning conduct rendered illegal and strikes the appropriate balance between the legislature, the prosecutor, and the court in defining criminal liability. [Citation.]" ' " (*Avery*, *supra*, 27 Cal.4th at p. 57.)

"Having consulted the usual aids to eliminating ambiguity in statutory construction — text, context and structure, overall purpose, relevant case law, legislative history — and having found a satisfactory answer in none of them, we conclude that this is one of those rare cases where the rule of lenity applies." (*People v. Reyes* (2020) 56 Cal.App.5th 972, 989 [applying the rule of lenity to § 136.1, subd. (b)(1)].) That is, we can do no more than simply venture a guess as to whether the Legislature intended for section 136.1(b)(2) to operate conjunctively or disjunctively. In this rare circumstance in which it is unclear whether the Legislature intended to accord the word "and" its traditionally conjunctive meaning, a disjunctive reading of the statute would fail to "provide fair warning concerning conduct rendered illegal." (*Avery*, *supra*, 27 Cal.4th at p. 57.) The rarity, and egregiousness, of the ambiguity here is underscored by the Legislature's unusual words in adopting the statute. It recognized it was passing a criminal law despite believing from the very outset that "redrafting" was "necessary," as it had too closely hewn to an ABA model statute with "numerous rough edges" and language quality "far worse" than typical. (Sen. Com. on Judiciary, Analysis of Assem. Bill No. 2909, *supra*, as amended Apr. 9, 1980, p. 5.)

Accordingly, we adopt the construction more favorable to defendants: section 136.1(b)(2) is to be read conjunctively such that the language "assisting in the prosecution thereof" provides no independent basis for a conviction under the statute.[22] Where criminal charges have already been filed, postcharging dissuasion alone does not constitute an offense under section 136.1(b)(2).

Because it is undisputed that all of defendant's dissuasive conduct here occurred after the underlying charging document had been filed, the Court of Appeal correctly concluded that substantial evidence does not support the causing-clause element of the charged offense. Like the Court of Appeal, we therefore have no occasion to explore the assisting clause's contours.

As noted, in response to *Freer*, the Wisconsin Legislature codified the court's clarification that the statute's causing and assisting clauses are to be read disjunctively. Likewise, our Legislature remains free to clarify section 136.1(b)(2), as the Senate Committee on the Judiciary suggested it do "[a]t some point" to smooth out the statute's "numerous rough edges." (Sen. Com. on Judiciary, Analysis of Assem. Bill No. 2909, *supra*, as amended Apr. 9, 1980, pp. 6, 5.)

---

[22] We disapprove of *People v. Velazquez, supra,* 201 Cal.App.4th 219 to the extent it is inconsistent with this holding.

## III.  DISPOSITION

The judgment of the Court of Appeal is affirmed.

**GUERRERO, C. J.**

**We Concur:**

**CORRIGAN, J.**
**LIU, J.**
**KRUGER, J.**
**GROBAN, J.**
**JENKINS, J.**
**EVANS, J.**

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion**  People v. Reynoza

_____

**Procedural Posture** (see XX below)
**Original Appeal**
**Original Proceeding**
**Review Granted (published)** XX 75 Cal.App.5th 181
**Review Granted (unpublished)**
**Rehearing Granted**

_____

**Opinion No.** S273797
**Date Filed:** April 22, 2024

_____

**Court:** Superior
**County:** Santa Clara
**Judge:** Charles E. Wilson II

_____

**Counsel:**

Nancy Susan Brandt, under appointment by the Supreme Court, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Jeffrey M. Laurence, Assistant Attorney General, Catherine A. Rivlin, Seth K. Schalit, Bruce M. Slavin and Katie L. Stowe, Deputy Attorneys General, for Plaintiff and Respondent.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Nancy Susan Brandt
Attorney at Law
P.O. Box 6680
Albany, CA 94706
(510) 545-4920

Katie L. Stowe
Deputy Attorney General
455 Golden Gate Avenue, Suite 11000
San Francisco, CA 94102
(415) 510-3863